Carpenter *v.* Mather.

---

MILTON CARPENTER, Treasurer of the State of Illinois, plaintiff in error, *v.* THOMAS MATHER, defendant in error.

*Error to Sangamon.*

Where a statute fixed the seat of government at Springfield, upon condition that the inhabitants of said town should subscribe a certain sum of money towards erecting the State House, and execute their bonds for the payment of the same: *Held,* that a bond given under such statute was founded upon a sufficient consideration, and was valid.

J. LAMBORN, Attorney General, for the plaintiff in error.

J. B. THOMAS, for the defendant in error.

(1) 2 Wils. 206; 3 Johns. 56; 3 Stark. Ev. 1309; 4 Phil. Ev. 218.

Douglass, Justice, delivered the opinion of the Court:

This was an action of *covenant*, upon a bond executed by Thomas Mather and others, under the fourth section of "*An Act permanently to locate the seat of Government of the State of Illinois*," approved February 25, 1837. (1) The proviso to said section is as follows, " That this act shall be null and void unless the sum of fifty thousand dollars be donated by individuals, and secured by bonds, and security to be approved by the Governor, and made payable to the State Treasurer, to become due at such times as the Governor shall direct; which bonds shall be executed and filed with the State Treasurer, on or before the first day of May next; and which donation is especially designed to meet the appropriation herein before made, and shall be applied exclusively and immediately to that object." The bond is set out, at full length, in the declaration, and is in strict conformity with the provisions of this section. The breaches assigned are, that the said Mather did not keep and perform his said covenant, but broke the same, in this, to wit, the said Mather did not well and truly pay said sum of $50,000, according to the term and effect of said covenant, but failed and refused to pay the same, and the said sum of money has not been paid by any of the other joint and several obligors of said covenant, according to the terms thereof; and the plaintiff avers, that at the time of the commencement of this suit, the plaintiff was and still is the Treasurer of the State of Illinois, and the successor of said John D. Whiteside, in said office of Treasurer; all of which is to the damage of said plaintiff, as Treasurer of the State of Illinois, $100,000; and therefore he sues, &c.

The defendant demurred to the declaration, and filed an agreement between the parties to the following effect: that no exceptions be taken to the declaration, on account of the bond's being made to the old Treasurer, and suit being commenced in the name of the new Treasurer, either in the Circuit Court or the Supreme Court, and that no merely technical objections be made, but that the demurrer be decided upon the broad principles of law affecting the consideration and nature of the bond upon which suit is brought, and the law of the legislature authorizing such bond to be taken; and that either party may take the case to the Supreme Court, by writ of error, the other party waiving service of a *scire facias*, and agreeing to try the case in the Supreme Court, at the December session next, without waiving any of the rights of the State, or the defendants, and that judgment *pro forma* be given by the Circuit Court for the defendant.

In pursuance of this agreement, the Circuit Court considered and adjudged that the defendant go hence without delay, and recover of the plaintiff his costs in this behalf expended.

The only error assigned is the judgment of the Circuit Court, sus-

(1) Laws of 1837, 321.

taining the defendant's demurrer to the plaintiff's declaration. This assignment is intended, under the agreement of the parties, to impose upon this Court the duty of determining the legality and validity of the bond sued on. The case has been submitted without argument, and but one authority cited. That is the ·case of the Treasurer of the State of Vermont v. Luther Cross. (1) The two cases are precisely alike in all material points. The foundation of each was a donation, on the part of individuals, to aid in the construction of a State House, in pursuance of an act of the legislature. The opinion of the Court in that case is so clearly applicable to the case under consideration, and its reasoning so just and conclusive, we feel inclined to adopt it on the present occasion. The Court says, the subscription paper contained a contract between the State and the individual subscribers, and, if liable to none of the objections which have been urged, must be enforced. Here were parties *in esse*, capable of contracting. If the subscription was made before the passing of the act of the legislature in 1832, it was in the nature of a proposition to the State, that the several subscribers would pay the several sums annexed to their names, if the State House should be erected in Montpelier. If made after the passing of the act, it may be considered as accepting the proposition, emanating from the legislature, in the providing clause of the first section of the act, and providing the funds for that purpose. In either event, when the terms of the act were complied with, the contract between the State and the subscribers was mutual, and equally binding.

From the decision of the Court in the case of the University of Vermont v. Buell, (2) it appears that such contracts are not void for want of consideration; and it is to be observed that all the cases from Massachusetts, which the defendants have read, were before the Court on the hearing of the case against Buell. Of the propriety of a contract of this kind, between the State and individuals, it does not become us either to enquire, or express an opinion. The doings of the legislature, when not liable to constitutional objections, are to be respected by the other branches of the Government, and their wisdom or propriety are not to be questioned by a coördinate branch. The propriety of any particular location of public buildings, may depend, in some measure, upon the sum proposed to be given by the citizens of any place. The public interest obviously requires that such location should be made with a view to all the circumstances; and the greater or less burthen to the whole State, would be an important circumstance to be taken into consideration, in determining between several places, in other respects equally convenient. The increased value of the property in the vicinity of public buildings, would seem to require that those who are benefited, should contribute some part of the increase, for

(1) 9 Verm. 289.                    (2) 2 Verm. 48.

Carpenter *v.* Mather.

the purpose of erecting them, rather than that the whole advantage should accrue to them, and the expense be borne by the citizens generally. We can see no foundation for the objection made to this subscription, on the ground of public policy, or propriety. These views apply with equal force to the case at bar, and settle the question of the legality and validity of the bond. The statute authorized the taking of the bond, and the benefits to be realized, in consequence of the location of the seat of Government, under the statute, were a sufficient consideration.

The judgment of the Circuit Court is therefore reversed, and the cause remanded.

*Judgment reversed.*