## T. M. SHIRLEY v. JOHN BYRNES.

1. A petition which explicitly states the amount of the defendant's indebtedness to the plaintiff, is sufficient, if sworn to, to sustain an attachment, and is good upon general demurrer.

2. Though one of several counts in a petition was bad upon general demurrer, and a general demurrer was not sustained as to it, yet the error is not available when that count was abandoned by an amended petition at the trial, so that it could not have prejudiced the defendant.

3. A special bail bond possesses four legal attributes under the statute of this State (article 152, Paschal's Digest) : It restores to the defendant

the possession of the attached property ; it effects an appearance of the defendant ; when given, the action ceases to be a proceeding *in rem*, and proceeds as in ordinary cases ; and finally, if the plaintiff recovers judgment, it is to be rendered against all the obligors in the special bail bond.

4. By the giving of a special bail bond the attachment becomes *functus officio*, and the attached property is released, the bond being substituted in its place ; and if the attachment was wrongfully sued out, the defendant can recover his damages by suit on the attachment bond, but not by way of reconvention.

5. The doctrines respecting contracts extorted by duress of property have no application to a bond taken by an officer who holds property by virtue of legal process, and takes the bond by authority of law.

6. After judgment rendered for the plaintiff by default, it was not error to overrule motions of the defendant to quash the attachment and the special bail bond.

7. A motion for a new trial must be made within the time prescribed by the statute, or the order overruling it will not be revised by this court.

APPEAL from Falls.    Tried below before the Hon. J. W. Oliver.

This action was commenced by attachment, in which the appellee was the plaintiff and the appellant the defendant.    The suit was brought in March, 1870.

The plaintiff alleged in his sworn petition that the defendant was indebted to him in the sum of fifteen hundred dollars, half of which was wages stipulated to be paid him by the plaintiff for overseeing laborers and superintending work on the Waco Tap Railroad, upon which the defendant was a contractor, and the remainder consisted of similar claims for services or labor of other persons, assigned by them to the plaintiff for value, and of an account for supplies to the hands furnished by the plaintiff, and of freight bills paid by him for the defendant.    No bill of particulars, however, was filed of this account for supplies and freight bills, and it was formally abandoned in an amended petition filed by the plaintiff.

As cause for the attachment, the sworn petition charged that

the defendant was about to remove his property from the railroad work and beyond the limits of the county, whereby the debt might be lost, etc.

Under the attachment the sheriff seized sundry mules and other work animals, wagons, carts, harness, sutler's goods, etc., as the property of the defendant Shirley.

On the fourteenth of May, 1870, application in behalf of the plaintiff was made for an order to sell such of the attached property as was of a perishable nature; and on the nineteenth of the same month the order was granted by the district judge. But on the ensuing seventh of June, Shirley and two sureties executed their special bail bond, payable to the plaintiff in the sum of sixteen hundred dollars, conditioned for the payment of any final judgment which might be rendered against Shirley in the suit; and on this bond the sheriff released the property attached.

At the October term, 1870, the plaintiff recovered judgment by default, with writ of inquiry—the judgment being rendered against Shirley's sureties as well as himself.

Subsequently, but at the same term, a motion was made in behalf of Shirley, to set aside the default; and at a later day of the term an amended motion of similar import, and also a motion to quash the attachment, were filed. The matters mainly relied upon in these motions were in the nature of exceptions to the original petition, the attachment, and the special bail bond. One clause of the original motion claimed damages in reconvention, alleging that the attachment was wrongfully sued out. Another motion was filed, asking that the special bail bond be quashed.

All of these motions were overruled, and on the twenty-eighth of October, 1870, the writ of inquiry was executed and judgment final rendered for some $1200 in favor of the plaintiff.

On the first of November, a motion for a new trial was made and overruled; and the defendants gave notice of appeal.

The questions of practice discussed in this case are important,

and have but rarely arisen for decision in the reported cases; and therefore a fuller report of this case is given than would otherwise appear to be called for.

*W. B. Forde*, for appellant.—Here is a singular catalogue of error.

I. The original petition sets up no cause of action. (Mims v. Mitchell, 1 Texas, 444; Caldwell v. Haley, 3 Texas, 318; 4 Texas, 151; 29 Texas, 122, 201.) Conclusions of law are not sufficient. (13 Texas, 38; 24 Texas, 158, 160; 22 Texas, 112, 610.)

First count—Does not show services performed, or breach of contract and damages, or how, or for what, or that defendant was in debt to plaintiff $750.

Second count—Connected with no promise or breach of contract, does not show with whom contract was made, but " in same manner," *i. e.*, by contract, no parties, time or amount—" same kind of services," not for whom, when or where; " services transferred to plaintiff," *ergo*, defendant must pay him.

Third count—No contract or services rendered nor *quantum meruit*, does not show for whom or who was bound to pay. Legal conclusion that something is " due by Shirley to Pat. Malone," must be shown to be true by allegations of facts.

The last count was abandoned in amended petition. No authorities are necessary to prove that this is not a petition.

II. Amendment cannot cure the defects, because filed after the beginning of the term, not served on defendant, and as he had no service of the original, is itself a ground for new trial, as it, for the first time, sets out a cause of action, abandoning one count and adding time and amount to the first. (16 Texas, 594; 22 Texas, 109.)

III. No citation was ever served or issued on the original or amended petition, and judgment by default and final on writ of

inquiry, are nullities. Not necessary to except where there is no petition, or where there is no service. (25 Sup., 310; 4 Texas, 313.)

It is contended that a perfect suit is made out of this by the power of a special bail bond, given by the defendant in the auxiliary proceeding of attachment; that the auxiliary has become the principal, and the suit for the recovery of the debt, a mere incident.

But there was no attachment; and if one, it was a nullity.

First—To authorize or to make an attachment, there must be a petition at least good on general demurrer, and its material allegations must be sworn to. (Paschal's Digest, article 138; Cordova v. Priestly, 4 Texas, 257.)

Second—An affidavit to one of the grounds of attachment and amount claimed. The petition is here (the affidavit, if there is any for the *jurat* is not intelligible), and states neither of the causes for attachment. In the first part it claims $1500, in the last $1535.

If there is anything well settled, it is that the affidavit cannot be amended. In this case the plaintiff seeks by his amendment, by relation back, to supply the original petition and affidavit. (As to affidavits, Drake on Attachments, § 85, *et seq.*)

Third—A bond. There is none in this case. There is a bond among the papers, entitled in a cause of John Byron *et al,* v. Thomas M. Shirley, and without number. It has not the style of this case; it is not for double $1535, the amount claimed in the affidavit; it is approved by the sheriff, not by the clerk, and bears no evidence of ever being filed in this cause. Paschal's Digest, article 145, provides "that upon such affidavit and bond being filed, etc., attachment may issue." Article 1445 provides "that no paper shall be considered as filed in the proceedings of any cause," until so endorsed by the clerk. The great importance of this is obvious in this case. The defendant may have inspected

the files. And these references apply as well to the special bail bond. In Wright v. Rayland, (18 Texas, 292,) the filing by endorsement of clerk is solely relied upon.

Fourth—A writ, and must have the seal of the court. The writ placed in the sheriff's hands on the twenty-ninth, levied and returned, had none. Another writ, issued without authority, placed in the hands of the sheriff on the thirtieth, levied and returned, had the seal affixed, but return defective, in not showing whose property levied on. (25 Texas, 31.)

The decision in Kennedy v. Morrison, (31 Texas, 207,) was not before the district court. In this, as in that case, it was a question whether the bail bond waived errors. It is considered that the question is settled, for in that case the court inquired into the validity of the attachment, and pronounced it valid.

It may be said that the errors here could only be reached by motion or plea; but there was a motion upon every available ground, though filed after judgment by default. If our views are correct, the court erred in rendering that judgment. If correctly rendered, it was for want of answer. Motion to quash auxiliary proceeding is not an answer, and if pending when such judgment is rendered, may be considered afterwards, and if considered, may be filed then. Article 147, Paschal's Digest, limits no time for such motion. It may be made after answer to the merits. (8 Texas, 351.)

An objection of nullity may be taken at any time, and by any person. (9 Texas, 353; 11 Texas, 17.)

Is the attachment proceeding a nullity? In every step, and the judgments of the courts as well as the text is: "A thing is void which is done against law at the very time of doing it." (Ba. Ab. Void, etc., a.) Applied to this class of cases, an old writer well says, "the statute law is like a tyrant, where he comes he makes all void." (1 Moel, 35.) And it is too well settled to be questioned, or to need authority, that when the statute law pre-

scribes a mode of procedure the maxim holds good, *non observata forma, inferetur adaullatio actus*—the procedure required is rigidly exacted; for the fixed forms and rules are to guard against abuses likely to occur from the absence of arbitrary and peremptory provisions, and a liberal or equitable construction of the statute would completely defeat its object, by permitting the very procedure intended to be guarded against, especially where the remedy sought is in derogation of common right.

Attachments sued out, not in conformity to the statute, are sued out against law, and held to be nullities. (8 La. R., 587; 3 Texas, 321, and authorities referred to.) In Snydor v. Totman, 6 Texas, 196, this court says : " It has been declared that the process by attachment is liable to produce so much oppression and injury, that a rigid conformity with the law authorizing its issuance, will be exacted."

A nullity bears no fruit, produces no valid offshoots. The attachment is a nullity ; our bail bond, which is the whole case here, is of no effect; the plaintiff has no standing in court, and his case should be dismissed.

Here we might rest the case, but from the importance attached to it we beg further indulgence.

If this is a special bail bond "it shall be deemed an appearance." (Paschal's Digest, article 152.) To what extent and for what purpose ? " When technical words occur in a statute they are to be taken in a technical sense." (Sedg. on Stat. and Con. Law, 261.) It signifies "making formal entries expressing appearance." (Bouv. Law Dic., app. 3.) Does a technical appearance warrant judgment by default ? Paschal's Digest, article 146, provides " that no judgment shall be rendered in suits by attachment, unless citation or summons has been served in the ordinary mode, or by publication in the manner provided by law ; and article 1508 provides that where process has been served, and defendant fails to answer, plaintiff may have judgment by default ;

and the second proviso is, "if the defendant in person, or by his agent, or attorney, shall appear in the case, without service of process being made or perfected, then such appearance shall have the same effect," etc. .The technical appearance must not overturn these express enactments, and must be strictly construed. "If the defendant in person," or etc., "shall appear," has no technical signification. "Appear" is not a technical word; is used in its ordinary signification, and means corporeal presence. The defendant was not present in person, or by agent or attorney. Judgment by confession requires personal appearance, (Paschal's Digest, articles 1477 and 1478), and judgment by default, or if this should be construed to be *nil dicit*, is the nearest· approach to it. If a technical appearance had been intended, the statute would have provided, "if the defendant shall enter his appearance in the case," etc. Nor is it singular that the statute should make this safeguard where the plaintiff has not pursued his remedy in the usual mode by citation, or that it should be extended to attachment cases. At the common law, pleas to the jurisdiction (Chitty on Plead., 444,) of misnomer, etc., (Chitty on Plead., 456), required personal appearance, and thus the statute and common law clearly mark the distinction between an actual and technical, or constructive appearance. Appearance in person may be to demur to process, *de bene esse*, or otherwise conditionally; and the appearance resulting from a bail bond, without violence to the language of the statute, may be construed a technical appearance for the latter purposes.

There are four ways of giving jurisdiction to the district court, which will authorize judgment by default:

First—By service of citation. .(P. C., 1433.)

Second—By acknowledgment or waiver of service, in writing, signed by the defendant, and filed as a record in the case. (P. D., 1432.)

Third—Where the defendant appears in person, or by his agent or attorney. (P. D., 1508.)

Fourth—By judicial attachment, (P. D., 139,) where the facts upon which final judgment has been given, must be put upon record, and in service by publication one term after service must elapse, showing great caution where the defendent has not been regularly served or personally appeared.

The appearance resulting from a special bail bond is neither of these. As attachment law, it must be strictly construed. It is not voluntary appearance, but results from, in this case, a necessary act, whose primary purposes and effects are: first, to release the property attached ; second, to secure the debt and interest. Such appearance is not the waiver or acknowledgment provided for in article 1432, which must be in express terms for the purpose, and become a record. It cannot be construed to mean an appearance in person. (P. D., 1508.)

The strong language of Chief Justice Morrill, in Kennedy v. Morrison, 31 Texas, 221, must be taken with reference to that case. There was a regular and valid attachment, here there is not. There was no judgment by default to be passed upon, and the appearance was simply held to be such as authorized the court to give final judgment in that case. There defendant was present by attorney.

Where service is by publication, no judgment by default before final judgment. (Case cited in P. D., note 594.)

Were it not for article 1432, there could be no waiver authorizing judgment by default, (3 Pike, 261 ; 7 Porter, 452 ;) and the law as to service by citation has always been rigidly construed, so must be the waiver or acknowledgment, and if bail bond appearance is to be substituted, it must be held that the bond and everything connected with it must be in strict conformity to law.

It follows that the court below could not enter judgment by default against this defendant, much less against his sureties. This judgment furnished the only evidence in the case—the petition and amended petition.

What purpose, then, does this bail bond appearance serve? It does not relieve the plaintiff from the necessity of establishing his claim by a final judgment. Whatever is void or not amendable stands on its merits. Appearance and answer waive errors, but cannot give jurisdiction to adjudicate on a void bond. If the defendant fails to answer after regularly entering his appearance by bail bond, he must submit to such final judgment as the plaintiff is entitled to.

But the judgment by default is void, because the bond which enters his appearance was not filed at the time, and subsequently filing for a day previous to such judgment, does not make it valid, even against the defendant; and, by analogy to judgments, entered *nunc pro tunc*, which must not affect the rights of third parties, (1 Dev., 442; Allston v. Ling, Riley, 199; Allson v. Morrow, Riley, 199;) it could not validate the judgment by default against the sureties who were not parties to the suit, but might have defended against the bond. (3 Denio). The bond, though taken by the sheriff, was the property of the plaintiff, and the failure to file, his omission. (Last quoted authorities.) The bond may be given at any time before final judgment. If the plaintiff has replevied, he takes the bond without the intervention of the sheriff; if the property is still held by the sheriff it is taken by him; and notwithstanding it was held in a case referred to by Mr. Drake, that the sheriff was the agent of the obligors, under our statute, and on principle he acts as the agent of the plaintiff, as, by means of the bond, the plaintiff secures even more than his lien on property to secure his debt, but appearance also—in neither case is the bond required to be filed till offered in evidence; as evidence, it is nowhere required by law to be made a record or part of the papers of the case, the court could not have known of its existence at the date of the judgment by default, as it was not then filed or its execution proven, nor was it offered in evidence, nor could it have been at

that time, nor was it offered in evidence upon executing the writ of inquiry.

But is the bond a special bail bond? The statute points out at what stage in the proceedings a bail bond may be executed. After the plaintiff has fully complied with the letter of the attachment law, and the officers performed their duties, this bond may be given to recover the property legally siezed; but if the property is not seized by the means and modes of law, though the owner execute bond for its release, such as in a proper place and circumstances would be a bail bond, yet it is not such a bond any more than if executed to recover his property from a public enemy; and whether from a public enemy or an officer holding it under illegal or void process, the bond would be equally assailable as procured by duress of property. (Collins v. Westbury, 2 Day, 811; Forshey v. Furgerson, 5 Hill, N. Y.; 1 vol. Parsons on Contracts, 394, latter part of note.)

Within fifteen days defendant may replevy; after that time plaintiff may replevy, or procure an order of sale. (Paschal's Digest, articles 150, 155.) Defendant had no notice of this suit or attachment until the elapse of that time, and the plaintiff had asserted his right by procuring order of sale, and defendant was forced to give this bond to relieve his property. But if he might have then replevied, this is simply an imperfect replevy bond.

It is not in its terms a special bail bond. (Paschal's Digest, article 152.) Such a bond recites the suit and facts, and binds the obligors to pay the debt and interest—having relation, of course, to the judgment; this binds the obligors to pay the judgment, on condition defendant does not. A bail bond fixes the liability of the obligors immediately and unconditionally; this postpones the liability of the obligors till after judgment against the defendant, and then fixes their liability on condition that the defendant does not satisfy the judgment against him, as in replevy bond. In a special bail bond the liability of the obligors being im-

mediate and unconditional, judgment is rendered against them when it is against the defendant—in this, judgment must first be recovered against the defendant, as in case of replevy, and upon his default in its payment, that judgment becomes and is the evidence of the liability of the obligors. In a special bail bond the obligors are only liable for the debt and interest; in this they are liable for the costs also, which, in a protracted suit, may amount to more than the debt and interest, and the court below, departing from its authority, rendered judgment against the obligors for costs. Further departure from the statute might be shown; and there is no authority in precedent or principle for judgment on a bond like this until judgment be rendered against the defendant and default made. The obligors here have made their own bond. The court cannot reform it, or make a new one, or construe it contrary to its terms into a bail bond; and, as before argued, if the rights of the defendant and his sureties depend on the appearance entered by this as a special bail bond, it is more important to require strict conformity to the statute, and that it should be supported by every act required by the statute of the plaintiff, and as rigidly scrutinized and construed as is citation and service thereby.

Two writs were issued the same day; one March 29, without seal, and void, (Penal Code, article 164) came to sheriff's hands the day issued, levied on the thirtieth; the other came to hand thirtieth, levied same day. In the first-named levy is included "one brown mare, valued at $100," not included in the other. Upon the void writ the bond is given, as it recites the sheriff's endorsement thereon, and if everything else were valid, the bond here topples to the ground.

The affidavit of defendant and his attorney show additional and full cause for new trial. Honest mistake of counsel good cause. (Riley v. Emerson, 5 New Hampshire, 531; Winn v. Young, 1 J. J. Marshall, 52; Dowell v. Winters, 20 Texas, 796, 797.)

These affidavits show a meritorious defense, which would not have .delayed the action ; negative, but the cause was alone established by plaintiff's pleadings—this in an action where every step, from the title in the petition to final ·judgment, is irregular and contrary to the statute. If an excuse. for not pleading were needed, they contain it, and they and every paper and ruling of the court, show that great injustice has been done, and that plaintiff is simply endeavoring to shelter his wrongs, oppression and errors under a technicality which debars an inquiry·into merits. The ruling and language of Lord Mansfield in Anderson v. George, 1 Bur., 352, are strikingly applicable in principle; "the rules of practice," says he, "must be general, and he who abuses them in a particular case should not shelter a trick by regularity." (This and the case of Corey v. King, referred to in Gra. & Wat. on New Trials, 3 vol., 1013, 1014 ; see also, 1475 and 1476.)

*Robards & Jackson*, for appellee.—I. The original petition was good in substance. It states a definite indebtedness from the defendant to the plaintiff, shows how and for what such indebtedness was incurred, and that the defendant had failed and refused to pay it. Those elements constitute a perfect cause of action.

In laying the basis for the writ of attachment it is fuller than the statute requires. It alleges that the defendant "is about to remove his property from the said railroad work situated in Falls county, and out of the limits of said county, whereby the plaintiff may lose his said debt," and concludes with averring that "this attachment is not .sued out to injure the defendant, but that justice may be done." There is surplusage in these averments, but that is all. (Paschal's Digest, article 142.)

Not one of the authorities cited by opposing counsel in his criticism on the original petition touch us in the least, except, perhaps, as to the last count, and that count was abandoned in our amended petition. · But if this count had not been abandoned, no argu-

ment is necessary to show that its insufficiency could not vitiate the other causes of action which were well pleaded, and which of themselves sustained the attachment.

The original petition was good on general demurrer. (See Kennedy v. Morrison, 31 Texas, 207; Stiles v. Giddings, 21 Texas, 783; Black v. Drury, 24 Texas, 289; Williams v. Warnell, 28 Texas, 523.)

II. A petition for an attachment may be amended without swearing to the amendment. (Pearce v. Bell, 21 Texas, 688.) That the amended petition filed in this cause was unexceptionable is not questioned; but it is said that it could not be regarded in this case, because filed after the beginning of the term, and not served on the defendant.

The rule thus invoked applies only when the defendant has not made an appearance in the suit, and the amendment sets up a new cause of action. In this case the amended petition does not set up a new cause of action, and the defendant had made an appearance. Therefore he was bound to take notice of the amendment. (Ward v. Lathrop, 11 Texas, 286, and the numerous authorities there cited.)

III. Again it is objected that no citation was served on the defendant. In Kennedy v. Morrison, 31 Texas, 207, there was no legal service of citation, and the same objection was relied upon.

But the court (page 221) say, that by giving a special bail bond the defendant acknowledged service, which, of course, was a waiver of citation.

IV. The giving of the special bail bond was "an appearance of the defendant." Such is the explicit language of the statute. (Paschal's Digest, article 152.) Counsel for the defendant struggles bravely to show that the statute only means a "technical appearance," or some sort of a *quasi* or *sub modo* appearance, which is not to be regarded as an appearance at all. The case in

31 Texas, as just cited (Kennedy v. Morrison), confutes this position so conclusively and emphatically that we need not detain the court by discussing the point at any length.

Indeed, it would seem that the language of the statute is so plain as to preclude constructive modifications or limitations of its obvious meaning. It might as well be contended that the "judgment" for which it provides, against all the obligors in the bail bond, is only a "technical judgment," from which no execution could emanate.

V. With all parties thus in court, the plaintiff recovered judgment by default, for want of an answer. At this late stage of the case, after having by their own act, in order to recover the possession of the property, dissolved and disposed of the attachment, and entered their appearance to the suit, the defendants move to set aside the default, alleging, as their sole reason for suffering it to be taken, that one of Shirley's attorneys was "under the impression" that the matter had been settled—nothing more, be it observed, than the mere stark-naked "impression," without an origin or an excuse assigned it.

Is that a valid excuse for a default? Are the jungments of a court liable to be set aside on unaccountable "impressions" of attorneys? Though courts are, and when merits are shown should be, liberal in opening defaults, yet no case can be found to countenance such an absurdity. To tolerate such a practice would bring judicial proceedings into merited contempt; and we are confident that so pernicious an example will never be set by this court.

The remaining causes assigned in this motion, except the last one, are, in their nature, nothing but exceptions to the original petition and to the attachment proceedings. It is clear on general principles that after the giving of a special bail bond and a judgment by default, such exceptions could not be heard. After default taken, what remains to be done to consummate and con-

XXXIV—40

clude the case? If the cause of action be for a sum certain, judgment final follows as matter of course without any intermediate proceedings. But if, as in this case, the amount due be uncertain, then what remains to be done? Is there anything more than to reduce it to certainty by execution of a writ of inquiry, which is itself a matter of course? That is the only difference between the default in the one case and in the other. But is it not so obvious as to be indisputable that after default in a suit for a sum certain, exceptions to a petition or to attachment proceedings cannot be interposed to prevent judgment final? In like manner, it is equally clear that, after default in a suit for an unliquidated amount, such exceptions cannot be interposed to prevent the writ of inquiry and judgment final. The default precludes them in the one case just as much as in the other.

And, so far as the exceptions thus taken to the attachment proceedings are concerned, how could they be entertained after the giving of the special bond, by which those proceedings were expunged and the suit resolved into " an ordinary case," in which an " attachment had never issued," as said by this court in Kennedy v. Morrison, and as, indeed, is said by the statute itself? If entertained, it is self-evident that the case was not proceeding " as an ordinary case," although the statute peremptorily provides that it shall so proceed after the giving of a special bail bond.

The concluding cause assigned in the motion is the only one making any pretence to showing merits. And what sort of merits? It is a " plea of reconvention," based upon damages alleged to have been sustained by the pretended wrongful suing out of the attachment. This plea, in its nature, is a cross action, and has not a single feature in common with such a " meritorious defense " as must be shown in order to open a default. The " meritorious defense " must consist of matter responsive to the " cause of action " sued upon, which in this case was the money due. Even if it were admitted that the attachment was wrongfully sued out, how would

that tend in any manner to show that the debt claimed was not just and due?

Again, the attachment proceedings had disappeared from the cause, and therefore, if wrongfully sued out, the remedy of the defendant must be by suit on the attachment bond, and not by plea in reconvention.

And finally, there was no affidavit to even such "merits" as could be imputed to this attempted defense.    An affidavit of merits was indispensable.    (Cook v. Phillips, 18 Texas, 31; Dowell v. Winters, 20 Texas, 793.)

Some nine days after their original motion to set aside the default, the defendants filed an amended motion of the same import. For the most part, it is but a mere amplification of parts of the original motion, and to that extent is effectually disposed of by what is already said.    Its new features may merit a brief notice. It attempts to impeach the special bail bond on the pretense that it was obtained by " duress of property."

In the first place, before they could be heard for such a purpose, it was incumbent on them to get rid of the default suffered.    That was the first thing, and an indispensable thing, for them to do, before they could be heard to question any of the proceedings antecedent to the default.    So long as the judgment by default stood, they were estopped by it from assailing any of the antecedent proceedings in the cause.

But in what proper or legal sense can the seizure and detention of property by virtue of legal process be called "duress of property?"    To all intents and purposes the property was held by the sheriff under legal process; and if it were even admitted that the attachment proceedings were abatable, yet they were valid for all purposes until they should be actually abated "on motion of the defendant."    That is a necessary deduction from the provisions of our statute. · (Paschal's Digest, articles 147, 148.)

Can a defendant in attachment treat the writ levied on his prop-

erty as sufficiently valid to entitle him to give a special bail bond, and at the same time as sufficiently invalid to enable him to defeat and avoid the bond? Clearly, he cannot thus trifle with the process of the courts. The only condition in a special bail bond is the payment of the money in case judgment be rendered for the plaintiff. There is no condition making the bond defeasible in case the attachment was wrongfully sued out, or was abatable on motion of the defendant. It is from a custody admitted to be lawful, and not from a forcible or illegal "duress," that a special bail bond releases property; and after a party has availed himself of its advantages, it is not in his power to repudiate its obligations.

The authorities cited by opposing counsel respecting contracts, extorted by duress of property, lend no countenance to the idea that the custody of property by an officer of the law, by virtue of legal process, can ever be treated as such duress.

There is no form prescribed in our statute for a special bail bond. The bond in this record fully comforms to all its requirements. Its recitals and condition clearly characterize and denominate it a special bail bond, and nothing else. The only tangible objection taken to it by opposing counsel, is that it subjects the sureties as well as the principal to a judgment for the costs as well as for the debt and interest, though the statute says nothing about the costs. We reply, that such is the law itself, in effect if not in words. There is to be but one judgment, and the same judgment, against "all the obligors in the bail bond," and the costs of suit are but an incident to the debt and interest recovered. As between themselves, the relation of principal and surety existed among the obligors in the bond; but the statute makes them all principals and joint obligors in their relation to the plaintiff. Accordingly, this court in Kennedy v. Morrison, already cited, rendered one and the same judgment against all of the obligors, and thus settled this point in our favor.

And finally, under this head, there was no affidavit supporting the allegations made in this amended motion, except one by the attorney who labored under the unaccountable impression that the case was settled, verifying the impression, but leaving it as unaccountable as ever; which impression we may dismiss with the remark that while it might have furnished a reason for seeing that a proper disposition should be made of the case when called for trial, could supply none at all for suffering a judgment to be taken against the defendants.

VI. The sundry motions to quash the attachment, bail bond, etc., which are found in the record, were properly overruled by the court. They could not be entertained after the judgment by default.

VII. Finally, we have a "motion for a new trial," said to be supported by the affidavit of defendant, Shirley, which seems, however, not to have been filed with the motion, but on the next day. But the motion itself was filed on the fourth day after verdict and final judgment, and of course came too late. (Paschal's Digest, article 1473; Warner v. Bailey, 7 Texas, 520.)

Judgment final was rendered, as the record shows, on the twenty-eighth of October, and this motion was filed on the first of November following. This alone vindicates the action of the court below in overruling the motion.

But if the motion and affidavit could, in any point of view, be regarded as entitled to revision by this court, a fair consideration of the affidavit will disclose its flagrant inadequacy to sustain the motion. Its first averment is about a certain letter, evidently of a friendly nature, written by the appellee to. appellant, Shirley, when the attachment was sued out, and which is charged to have deceived and misled the appellant. But the appellant takes care not to exhibit the letter, so that it might speak for itself, and the court be enabled to judge from its contents whether it was calcu-

lated to deceive or was merely a commendable overture for a friendly settlement. There is no pretense that the letter was lost or destroyed, nor other excuse for its non-production. Nor is there any attempt to explain how this letter could possibly continue to deceive and mislead the defendant into suffering a default, subsequent to the effort of the appellee to have the attached property sold, necessitating the appellant to give the special bail bond. At that stage of the case, if not before, a man of any sense must have been apprised that it behooved him to attend to the suit.

The second averment relates to the order of sale and the special bail bond, but has no legal significance whatever, and may be dismissed without comment.

Next we have a vague denial that the affiant was indebted to the appellee in any amount, "or if anything, a very small amount," followed by an equally indefinite claim that the appellee was indebted to the affiant, but not stating a fact or a figure, nor naming a witness nor a voucher, to sustain such pretenses or show the true state of accounts between them. And though the affidavit proceeds to deny any employment of the appellant at any definite rate, yet taken altogether, it admits services such as are sued for and does not deny their value.

And it is very significant that there is no pretense that any such a version of the case had ever been communicated by Shirley to his attorneys. On the contrary, the "meritorious defense" attempted by the attorneys, in their efforts to set aside the default, was of altogether a different and inconsistent character. The default was taken on the eighth of October, and this affidavit of Shirley's was filed on the second of November thereafter, nearly a month intervening; and this defense never, so far as appears, disclosed to even his attorneys in the cause. Even if the severe sickness in his family be accepted as a sufficient explanation of his personal non-attendance at the court, it is no excuse whatever for neglecting his defense, if any he had. It did not disable him from

communicating to his attorneys every fact necessary to a defense; and it is not pretended that he took such course, or any course to prepare for trial.

In short, it is clear in every point of view that the court below properly overruled this motion.

In conclusion we submit that this record is merely a history of a most persistent, but unsuccessful, effort on the part of the appellants to pervert a privilege accorded them by law into a means to defeat the legal right and remedy of the appellee.

WALKER, J.—This was an action commenced by attachment, March 29, 1870.

The questions arising in the case are treated with unusual ability. They are such as arise under the attachment laws, and are all referable to adjudicated cases.

The petition set out a good cause of action, which could not have been taken advantage of on general demurrer. (See Kennedy v. Morrison, 31 Texas, 207; Williams v. Warnell, 28 Texas, 523; Stiles v. Giddings, 21 Texas, 783, and Black v. Drury, 24 Texas, 289.)

If the petition explicitly sets forth the amount of the indebtedness of the defendant, and be sworn to by the plaintiff, it is sufficient. It is urged that the last count in the petition was bad. Perhaps it was, but the defendant suffered no wrong by it, as it was abandoned on the trial. Under the statute a special bail bond possesses four legal attributes: It restores the possession of the property attached to the defendant; it effects an appearance of the defendant; when it is given, the action ceases to be a proceeding *in rem*, and is proceeded in as in ordinary cases; and if the plaintiff recovers judgment, it goes against all the obligors in the bond. The attachment is now *functus officio*. The attached property is released, and the bond is substituted in its place; and if the attachment proceedings have been wrongly sued out, the defendant has his remedy upon the attachment bond, and not by reconvention.

---

---

All that is said in the appellant's brief respecting contracts extorted by duress of property, cannot affect the case of an officer who holds property by virtue of a legal process.

After the judgment by default, all motions to quash the attachment and bail bond were properly overruled by the court.

The motion for a new trial came too late. (Paschal's Digest, article 1473; Warner v. Bailey, 7 Texas, 520.)

We discover no errors in the record on which to reverse the judgment. It is therefore affirmed.

                                                   Affirmed.