# FRY ET AL. *v.* P. BANNON SEWER PIPE COMPANY.

## [No. 22,114. Filed March 5, 1913.]

1. MUNICIPAL CORPORATIONS.—*Public Improvements.—Contractor's Bond.—Construction.*—The bond required to be given by a contractor for the construction of sewers pursuant to the provisions of the cities and towns act of 1905 (Acts 1905 p. 219) is a statutory bond, and, in so far as it is within the statute, should receive a construction to effectuate its purpose. p. 313.

2. MUNICIPAL CORPORATIONS.—*Public Improvements.—Contractor's Bond.—Consideration.*—The statute itself furnishes the consideration for the conditions imposed by §8959 Burns 1908, Acts 1905 p. 219, §265, requiring a sewer contractor to execute a bond for the faithful performance of his work, etc. p. 314.

3. MUNICIPAL CORPORATIONS.—*Public Improvements.—Contractor's Bond.—Construction.—Protection of City Against Liens.*—Prior to the enactment of §8712 Burns 1908, Acts 1907 p. 167, there was no statutory provision for acquiring liens against public property, so that the provisions of a sewer contract and bond, executed prior to that statute, as to saving the city harmless from liens, were of no consequence, and the provisions thereof for the payment of all claims for labor and material could only be for the benefit of third persons and not of the city. p. 314.

4. MUNICIPAL CORPORATIONS.—*Public Improvements.—Contracts.—Bonds.—Construction.*—Under the provisions of §1278 Burns 1908, §1221 R. S. 1881, contracts and bonds executed by a contractor for the construction of a system of sewers pursuant to §8959 Burns 1908, Acts 1905 p. 219, §265, will be construed together, and the provisions of the statute will be read into them, and it will be held that the parties contracted with reference to such statute, and their liability will be confined to that contemplated by the statute. p. 315.

5. MUNICIPAL CORPORATIONS.—*Public Improvements.—Contractor's Bond.—Construction.*—A covenant in a sewer contractor's bond for the payment for materials is independent of a covenant therein for the protection of the city. p. 315.

6. MUNICIPAL CORPORATIONS.—*Public Improvements.—Contractor's Bond.—Protection of Subcontractors.*—A bond executed pursuant to §8959 Burns 1908, Acts 1905 p. 219, §265, requiring a bond for the faithful performance, etc., of a contract for public improvements, does not run to creditors of a subcontractor. p. 316.

7. MUNICIPAL CORPORATIONS.—*Public Improvements.—Contractor's Bond.—Liability.—Omitted Terms.*—A sewer contractor's bond, complete and unambiguous on its face, cannot be recovered upon

for lack of something claimed to be omitted, where the statute does not require the insertion of the alleged omitted terms, in the absence of allegation and proof that such terms were omitted. p. 316.

8.  MUNICIPAL CORPORATIONS.—*Public Improvements.—Contractor's Bond.—Construction.—Liability of Sureties.*—While the obligations of the sureties on a sewer contractor's bond, executed pursuant to §8959 Burns 1908, Acts 1905 p. 219, §265, should not be extended beyond their undertaking under the statute, within that undertaking a liberal interpretation is indulged in favor of material men and laborers. p. 316.

9.  MUNICIPAL CORPORATIONS.—*Public Improvements.—Contractor's Bond.—Sureties.—Notice of Default.*—The sureties on the bond of a sewer contractor must take notice of the default of their principal. p. 316.

10. MUNICIPAL CORPORATIONS.—*Public Improvements.—Action on Contractor's Bond.—Complaint.*—In an action on a sewer contractor's bond to recover for material furnished in the construction of the sewer, the complaint was sufficient without directly averring that the material was used in the construction of the sewer where it alleged the shipment of the material, its receipt by the contractor and its distribution along the lines of the proposed sewer for the purpose of being used in the construction thereof, since, if it was not so used, that fact was a matter of defense. pp. 316, 318.

11. MUNICIPAL CORPORATIONS.—*Public Improvements.—Contractor's Bond.—Default.*—In an action on the bond of a sewer contractor for the price of pipe furnished, it was not material that the complaint failed to directly allege that the pipe was actually used in the construction, since the bond was conditioned for the payment of all claims for labor and material, and it was the contractor's failure to pay which constituted the default for which the sureties were liable. p. 316.

12. MUNICIPAL CORPORATIONS.—*Public Improvements.—Contractor's Bond.—Obligation of Surety.—Nature.*—The obligation of the surety on the bond of a contractor for the construction of a sewer is an original undertaking, the same as that of the principal. p. 318.

13. MUNICIPAL CORPORATIONS.—*Public Improvements.—Action on Contractor's Bond.—Evidence.—Sufficiency.*—In an action on the bond of a contractor for the price of pipe furnished for the construction of a sewer, there is no failure of the proof to support a finding for plaintiff, where the evidence shows that all the pipe for which payment is claimed was delivered and distributed along the line of construction, and that part of it was put into the sewer construction, although it does not appear how much

was so used, since, if the work was abandoned, it will be presumed that the city had the advantage of the pipe that had not been used.  p. 319.

14. MUNICIPAL CORPORATIONS.—*Public Improvements.*—*Contractor's Bond.*—*Knowledge by Surety of Statutory Requirements.*—The surety on the bond given by a contractor for public improvements pursuant to §8959 Burns 1908, Acts 1905 p. 219, §265, are bound to know that a local surety on such bond is necessary.  p. 319.

15. PRINCIPAL AND SURETY.—*Release of Surety.*—*Addition of Surety.*—The rule that sureties are released by the addition of another name as surety ordinarily applies only where such name has been added to the instrument after its execution and delivery to the obligee and its acceptance by him.  p. 319.

16. ALTERATION OF INSTRUMENTS.—*Effect.*—The alteration of an ordinary written instrument after signing by some, and before signing by others, so as to change its terms, made with the knowledge of the payee or obligee, express or implied, will discharge the party not assenting when the contract is perfected.  p. 320.

17. ALTERATION OF INSTRUMENTS.—*Implied Assent.*—*Contractor's Bond.*—*Addition of Surety.*—Since §8959 Burns 1908, Acts 1905 p. 219, §265, requires that the bond of a contractor for public improvements in a city shall be signed by two sureties who are residents of the county in which the city is located, the act of a contractor, before the acceptance of his bond, in procuring local surety to sign same after it had been signed by nonresident sureties, did not operate to release the latter, but the latter are held to have at least impliedly authorized such act for the purpose of effectuating the bond.  p. 320.

18. ALTERATION OF INSTRUMENTS.—*Effect.*—Alterations which do not change the legal effect of a written instrument do not affect liability thereon.  p. 320.

19. MUNICIPAL CORPORATIONS.—*Public Improvements.*—*Contractor's Bond.*—*Insertion of Name of Surety.*—It is not essential to the validity of a contractor's bond executed pursuant to §8959 Burns 1908, Acts 1905 p. 219, §265, that the name of a surety be inserted in the body of the bond.  p. 321.

From Shelby Circuit Court; *Will M. Sparks,* Judge.

Action by the P. Bannon Sewer Pipe Company against James W. Fry and others.  From a judgment for plaintiff, the defendants appeal.  (Transferred from the Appellate Court under §1405 Burns 1908, Acts 1901 p. 590.)  *Affirmed.*

*Hord & Adams* and *Bennett & Davidson,* for appellants.
*Carter & Morrison* and *Davison Wilson,* for appellee.

MYERS, C. J.—Appellee sued James W. Fry and Frank
Lewark as partners and contractors under the name and
style of J. W. Fry & Company for the construction of three
separate sewers in the city of Greensburgh under contracts
with that city, and six other persons as sureties upon three
several bonds claimed to have been executed by them as sure-
ties for J. W. Fry & Company, for the performance of their
contracts and payment for material, sewer pipe, claimed to
have been ordered by the contractors for the construction of
sewers contracted by them to be built in Greensburgh, under
the style of J. W. Fry & Company, and shipped to Greens-
burgh, consigned by that style.

The complaint is in one paragraph, counting upon three
separate contracts, and three separate bonds executed con-
currently therewith, and the complaint was challenged upon
the ground of its insufficiency of facts to constitute a cause
of action.   In one of the contracts it is provided that the
contractor will ''save the city free and harmless from any
and all liability that may be occasioned through any fault
or negligence on their part or their agents or employes in
the performance of the conditions imposed upon them here-
in ; that they will pay for all materials and labor, and save
the first party free from any and all liability from liens.''
Two of the contracts provide that the contractor will save
said city free and harmless from any and all liability that
may be occasioned through any fault or negligence on their
part, their agents or employes in the performance of the
conditions imposed upon them herein; that they will pay
for all materials and labor and save said first party free
from any and all liability by reason thereof and free from
any and all liabilities from liens, etc.   Two of the bonds are
conditioned that the contractor ''shall well and truly per-
form all and severally the conditions'' of the contracts and
hold and save the city harmless and free from liability or

the payment of any debt or damage by reason of the act of the contractor in the execution of the work "and shall pay all claims for labor and material used in making such improvement." The third bond set out in the complaint omits any mention of payment for material and labor, but is otherwise similar in its conditions to the other two bonds. There were answers in general denial, and also answers of nonexecution of the bonds, verified.

The sufficiency of the complaint is challenged upon the ground that it is not alleged that the material furnished by appellee was used in the construction of the work. The allegations in this particular are, "That plaintiff at said prices and upon said terms for the purpose of being used in the erection, construction and building of said storm districts, sold and delivered to said J. W. Fry & Company at Greensburgh, Indiana, at the prices and upon the terms named in said proposal, a large amount of sewer tile, a bill of particulars of which is filed herewith and made a part hereof marked 'Exhibit H.' That said sewer tile was received f. o. b. cars at Greensburgh, Indiana, by said J. W. Fry & Company and by it hauled to various parts of said city, and were distributed along the lines of and adjacent to said sewers so to be constructed, and for the purpose of being used in the construction thereof. That plaintiff does not know, and has no means of knowing to what storm districts, and in what quantities it was so hauled, but the plaintiff avers that it was so accepted and distributed by said J. W. Fry & Company, and said Frank Lewark, the latter one of the alleged members of the alleged copartnership of J. W. Fry & Company." The contention of appellants is, that the same rule in regard to showing that the material or labor for which a lien is sought under the mechanic's lien law, obtains under this class of contracts and bonds; that sureties are the favorites of the law, and that their

1. contracts are not to be extended by construction. The proceedings for the construction of the sewers were

had under the cities and towns act of 1905 (Acts 1905 p. 219). By §8959 Burns 1908, Acts 1905 p. 219, §265, it is provided, that ''Upon the acceptance of any such bid the succcessful bidder shall enter into a written contract for the faithful execution of such work and shall give bond in an amount equal to fifty per cent of the contract price of such work, with freehold sureties, two of whom shall be residents of the county in which such city or town is located, to the approval of said common council or board of trustees to secure the performance of such contract and to hold such city or town harmless from the payment of any debt or damage by reason of the act of such contractor and to secure the payment of all claims for labor and material used in such improvement, which bond shall be in lieu of any and all other bonds heretofore provided for by any other law or laws of this state: *Provided,*'' etc. The bond required is therefore a statutory bond, and, in so far as within the statute, should receive a construction to effectuate its purpose. In

2.  such cases the provision of the statute itself furnishes a consideration for the conditions thereby imposed.

*Bildersee* v. *Aden* (1872), 62 Barb. 175; *Shirley* v. *Byrnes* (1870), 34 Tex. 625; *Thompson* v. *Blanchard* (1850), 3 N. Y. 335; *Sterner* v. *Palmer* (1859), 34 Pa. St. 131; *Richards* v. *Morse* (1853), 36 Me. 240; *Carpenter* v. *Mather* (1842), 4 Ill. 374.

At the time this proceeding was had, and the bonds were executed, there was no provision of the statute, as there

3.  now is (Acts 1907 p. 167, §8712 Burns 1908), for acquiring liens against public property, hence the provisions of the contracts, and bonds, as to saving the city harmless from liens, were of no consequence at that time, and the provision for the payment of all claims for labor and material used in such improvement could only be for the benefit of third persons, and not the city, and the contract and bond are dual in character, and run to third persons. *Aetna Indemnity Co.* v. *Indianapolis, etc., Fuel*

*Co.* (1912), 178 Ind. 70, 98 N. E. 706; *Knight & Jillson Co.* v. *Castle* (1909), 172 Ind. 97, 87 N. E. 976, 27 L. R. A. (N. S.) 573.

The moral obligation would be sufficient in connection with the statute, to raise the implication of such liability. This being true, the contracts and bonds will be construed together, and the provisions of the statute will be read into such contracts and bonds, and the liability will be confined to that contemplated by the law requiring it, and that the parties contract with reference to that law. §1221 R. S. 1881, §1278 Burns 1908; *Herod* v. *State, ex rel.* (1896), 15 Ind. App. 648, 43 N. E. 144, 44 N. E. 378; *United States* v. *Stephenson's Exrs.* (1839), 1 McLean 462, Fed. Cas. No. 16,386; *Carneal's Heirs* v. *Day* (1821), Lit. Sel. Cas. (Ky.) *492; *Robling* v. *Board, etc.* (1895), 141 Ind. 522, 525, 526, 40 N. E. 1079; *Faurote* v. *State, ex rel.* (1890), 123 Ind. 6, 23 N. E. 971; *Faurote* v. *State, ex rel.* (1887), 110 Ind. 463, 11 N. E. 472; *Holthouse* v. *State, ex rel.* (1912), 49 Ind. App. 178, 97 N. E. 130; *Hart* v. *State, ex rel.* (1889), 120 Ind. 83, 21 N. E. 654, 24 N. E. 151; *Graham* v. *State, ex rel.* (1879), 66 Ind. 386; *State, ex rel.,* v. *Rowles* (1912), 177 Ind. 682, 98 N. E. 722; *Opp* v. *TenEyck* (1885), 99 Ind. 345; *Scudder* v. *Union Nat. Bank* (1875), 91 U. S. 406, 23 L. Ed. 245; *Green* v. *Sarmiento* (1811), 3 Wash. C. C. 17, Fed. Cas. No. 5,760; *Turpin* v. *Povall* (1837), 8 Leigh (Va.) 93; *Crumlish's Admr.* v. *Central Improv. Co.* (1893), 38 W. Va. 390, 18 S. E. 456, 45 Am. St. 872, 23 L. R. A. 120.

5. The covenant for the payment for materials is independent of the covenant for the protection of the city. *United States Fidelity, etc., Co.* v. *American Blower Co.* (1908), 41 Ind. App. 620, 84 N. E. 555; *United States Fidelity, etc., Co.* v. *Omaha, Bldg., etc., Co.* (1902), 116 Fed. 145, 53 C. C. A. 465; *School Dist., ex rel.,* v. *Livers* (1899), 147 Mo. 580, 49 S. W. 507.

Whilst the bond required by the statute runs to those

who furnish labor or material to a contractor it has been repeatedly held that such bond does not run to those furnishing labor and material to a subcontractor; *Faurote* v. *State, ex rel.* (1887), 111 Ind. 73, 11 N. E. 476; *Faurote* v. *State, ex rel.* (1887), 110 Ind. 463, 11 N. E 472; *Miller* v. *State, ex rel.* (1905), 35 Ind. App. 379, 74 N. E. 260; *Swindle* v. *State, ex rel.* (1896), 15 Ind. App. 415, 44 N. E. 60. And, that a bond complete and unambiguous on its face, can not be recovered upon for lack of something claimed to be omitted, without allegation or proof that it was omitted, where the statute does not require the claimed omitted terms to be inserted. *Hart* v. *State, ex rel.* (1889), 120 Ind. 83, 21 N. E. 654, 24 N. E. 151.

These holdings imply that the obligations of the sureties shall not be extended beyond their undertaking under the statute, but within that undertaking, a liberal interpretation is indulged in favor of the material man, and laborer. *Closson* v. *Billman* (1904), 161 Ind. 610, 69 N. E. 449; *United States Fidelity, etc., Co.* v. *American Blower Co., supra; Buffalo Forge Co.* v. *Cullen, etc., Mfg. Co.* (1904), 105 Mo. App. 484, 79 S. W. 1024. This being true, sureties on such bonds must ·take notice of the default of their principals. *Hohn* v. *Shideler* (1905), 164 Ind. 242, 72 N. E. 575; *Town of Sullivan* v. *Cluggage* (1898), 21 Ind. App. 667, 52 N. E. 110.

Plaintiffs were not bound to anticipate a defense; when a *prima facie* case was made by the complaint, under the allegation of receipt of the pipe, and its distribution along the lines of, and adjacent to the sewers to be constructed, and for the purpose of being used in the construction thereof, we think that a *prima facie* case of its use in the sewer is made, and if the failure so to use it was a defense, it was the duty of appellants to overcome that *prima facie* case. *Malott* v. *Sample* (1905), 164 Ind. 645, 648, 74 N. E. 245; *Cleveland, etc., R.*

*Co.* v. *Gray* (1897), 148 Ind. 266, 272, 46 N. E. 675; *Douthit* v. *Mohr* (1888), 116 Ind. 482, 18 N. E. 449; *Byard* v. *Harkrider* (1886), 108 Ind. 376, 9 N. E. 294; *Sears* v. *Wise* (1900), 52 App. Div. 118, 64 N. Y. Supp. 1063; *McGarry* v. *Averill* (1893), 50 Kan. 362, 31 Pac. 1082, 34 Am. St. 120; *Rice* v. *Lodge* (1881), 26 Kan. 164; *Central Lumber Co.* v. *Braddock Land, etc., Co.* (1907), 84 Ark. 560, 105 S. W. 583, 13 Ann. Cas. 11. The failure to pay for the pipe furnished was certainly the default of the principal for which the sureties were liable. *Ochs* v. *M. J. Carnahan Co.* (1908), 42 Ind. App. 157, 76 N. E. 788, 80 N. E. 163; *Totten & Hogg Iron, etc., Co.* v. *Muncie Nail Co.* (1897), 148 Ind. 372, 47 N. E. 703; *Scott* v. *Goldinghorst* (1890), 123 Ind. 268, 270, 24 N. E. 333; *Charnley* v. *Honig* (1889), 74 Wis. 163, 42 N. W. 220; *United States* v. *National Surety Co.* (1899), 92 Fed. 549, 34 C. C. A. 526; *City of St. Louis* v. *Von Phul* (1896), 133 Mo. 561, 34 S. W. 843, 54 Am. St. 695; *Bell* v. *Kirkland* (1907), 102 Minn. 213, 113 N. W. 271, 13 L. R. A. (N. S.) 593, 120 Am. St. 621; *Howes* v. *Reliance Wire-Works Co.* (1891), 46 Minn. 44, 48 N. W. 448; *Red Wing Sewer Pipe Co.* v. *Donnelly* (1907), 102 Minn. 192, 113 N. W. 1, 120 Am. St. 619. Is the rule different where there is no direct allegation of its use? A different rule may obtain between material furnished to an owner, and material furnished to a contractor, in the latter case, it being required to be alleged and shown that the material was used where contracted for, whereas in case of purchase by the owner, it is not necessary to allege or prove its actual use in the building, based upon the ground of contract with the owner, although contract and agency are the bases for liability in the former class of cases. *Totten & Hogg Iron, etc., Co.* v. *Muncie Nail Co., supra; Scott* v. *Goldinghorst, supra; Ochs* v. *M. J. Carnahan Co., supra.*

The case of *Faurote* v. *State, ex rel.* (1890), 123 Ind. 6, 23 N. E. 971, is in point on the question urged by appellants as to the insufficiency of the complaint. In that case a bill

of particulars of sand and gravel, and in this a bill of particulars containing account of pipe delivered, conforming to the pipe specified in the contract was filed, and it was alleged that the materials were furnished for the construction of the road, and it was held that the allegations were sufficient to bind the sureties, and we regard the holding as correct. It could hardly be insisted that a material man primarily would be bound to follow his material, and see to it that it went into a structure for which it was contracted, and for which he delivered it upon the premises. If such were the rule, we apprehend that few would be disposed to make sales on credit. The sureties have an equal opportunity to see that the material is so used, and their undertaking is an original one, the same as that of the principal, so that it is no hardship to hold them, because it is within their express agreement. It must also be kept in mind that the sureties undertake that the contractor shall perform the contract itself, and the city could have held them to do so. Supposing the contractor had abandoned the work after the delivery of the material, they would have been subrogated to his rights and to the use of the pipe in completing the work, hence they should not be permitted to say that because it is not alleged that the pipe was used in the work, the complaint is insufficient, because their agreement that he shall perform the work and pay for the material is a sufficient consideration to support an action for the contract price of the pipe, contracted for, and delivered for the purpose of carrying out the contract. A pertinent inquiry is, Whose pipe was it on delivery? To that inquiry we apprehend that there can be but one answer. It was the pipe of the contractor, and in equity, for the purpose of doing the work contracted, the sureties were subrogated to his rights, with an original promise to pay for the pipe. Some one was entitled to the benefit of the pipe. If the sureties failed to avail themselves of their rights, they should not be permitted

to obtain appellee's property without paying for it.    If the work was abandoned, it will be presumed that the city had the advantage of it and to that extent the sureties were relieved of these obligations to the city. Upon trial, the evidence failed to show that the pipe was used in constructing the sewers.    All of it was distributed along the line of the work, and part of it was put in the sewer construction, but how much does not appear, and it is insisted that on the evidence there is a failure of proof. From what we have said in reference to the complaint it will appear that it was not necessary that it be so shown.

It appears from the evidence that the principal, and all of the sureties appearing on the bond, save one, had signed and acknowledged the bonds and delivered them to the principal for delivery to the city; that when the bonds were presented, the mayor refused to accept them, because there was no principal or surety on the bonds, residing in Decatur County, the statutes as we have shown, requiring that there should be two freehold sureties resident in the county in which the city is located, and the mayor refused to accept them without local surety.    The principal took the bonds, procured them to be signed by a resident of the county, took them back to the mayor, who inserted the name of the resident signer in the body of the bonds, and then accepted and approved them, and signed the contracts.    The principal did not notify any of the former signers as sureties, of the fact of procuring a resident surety, but did tell two of them he would have to obtain a local surety, and told all of them of the character and amount of the work.    In the first place, the sureties were bound to know that a local surety was necessary under the law in such contracts, and bonds.    In the second place, the rule of releasing sureties by the addition of another name, ordinarily applies to instruments after execution, that is, after delivery to, and acceptance by the payee or obligee, and it is manifest that there had been no execu-

tion prior to the addition of the signature of the local surety; on the contrary, the evidence is explicit, that there was no delivery, no execution, and that the bonds were expressly refused on that account, and the general rule is, that it is the alteration after execution, which vitiates a written instrument, but the point is not involved here, as there is no question of alleged change after the execution of the bonds.

It is also the law that the alteration of an ordinary written instrument after signing by some, and before signing by others, so as to change its terms, with knowledge of the payee or obligee, express or implied, will discharge the party not assenting, when the contract is perfected, that is, without additional requirements to effectuate it. *Palmer* v. *Poor* (1889), 121 Ind. 135, 22 N. E. 984, 6 L. R. A. 469; *Hert* v. *Oehler* (1881); 80 Ind. 83; *Coburn* v. *Webb* (1877), 56 Ind. 96, 26 Am. Rep. 15; *Schnewind* v. *Hacket* (1876), 54 Ind. 248; *Good Roads, etc., Co.* v. *Moore* (1900), 25 Ind. App. 479, 58 N. E. 540; *Moore* v. *Hinshaw* (1899), 23 Ind. App. 267, 55 N. E. 236, 77 Am. St. 434.

In this case, the instruments were not changed in any of their terms before delivery; and an additional name was inserted in the body of the bond, and an additional signature was attached. As the law required a local surety, the signers were bound to know it; they therefore must be held to have authorized, impliedly at least, the principal to secure such local surety; that is to do what was essential, to comply with the law, and make a valid bond. This is true even as to promissory notes. *Robling* v. *Board, etc.* (1895), 141 Ind. 522, 525, 40 N. E. 1079; *Faurote* v. *State, ex rel.* (1887), 110 Ind. 463, 11 N. E. 472; *Bank, etc.,* v. *Neal* (1859), 22 How. 96, 16 L. Ed. 323. Conversely, they would be bound by the insertion in the bond of terms which the statute did not import, or terms not essential to make the bonds comply with the statute, irrespective of the addition of a name; but alterations which do not change the legal effect of a written instrument do

not affect liability upon them. *Osborn* v. *Hall* (1903), 160 Ind. 153, 66 N. E. 457; *Foote* v. *Bragg* (1840), 5 Blackf. 363; 2 Am. and Eng. Ency. Law (2d ed.) 222 and cases there collected. There is stronger reason for the rule in the case of statutory bonds, because the statute itself enters into the contract, and because it will be presumed in signing the bond that the purpose was to effectuate it, and to that end that whatsoever is necessary to do so, within the statutory requirements, is impliedly authorized by the signers, and as the original agreement and undertaking of all, to execute an effective and sufficient bond as it left each of the signers, until its acceptance, its execution was *in fieri;* it could not have been legally understood otherwise than as in making. *Osborn* v. *Hall, supra; Robling* v. *Board, etc., supra; Bowser* v. *Rendell* (1869), 31 Ind. 128, 132; *State, ex rel.,* v. *Pepper* (1869), 31 Ind. 76; *Basey* v. *McKinney* (1909), 43 Ind. App. 422, 87 N. E. 693; *Keith* v. *Goodwin* (1858), 31 Vt. 268, 274, 73 Am. Dec. 345; *Governor* v. *Lagow* (1867), 43 Ill. 134, 138; *Sampson* v. *Barnard* (1867), 98 Mass. 359; *Ward* v. *Hackett* (1883), 30 Minn. 150, 14 N. W. 578, 44 Am. Rep. 187; *Graham* v. *Rush* (1887), 73 Iowa 451, 35 N. W. 518; *Edwards* v. *Mattingly* (1899), 107 Ky. 332, 53 S. W. 1032; *Brey* v. *Hagan* (1901), 110 Ky. 566, 62 S. W. 1, 96 Am. St. 464.

It was not essential that the additional name be inserted in the body of the bond, hence that fact is immaterial. *Griffin* v. *Wallace* (1879), 66 Ind. 410; *Potter* v. *State, ex rel.* (1864), 23 Ind. 550; *Danker* v. *Atwood* (1875), 119 Mass. 146. The addition of a signature on the bond was a statutory compliance of which appellants were bound to take notice, and which they presumptively authorized.

There is some conflict in the evidence as to whether James W. Fry and Frank Lewark were copartners in the contracts and bonds sued on. Neither of them is here as appellant,

322    SUPREME COURT OF INDIANA,

Muncie, etc., Traction Co. *v.* Citizens Gas, etc., Co.—179 Ind. 322.

or joining in the appeal, as a term appeal, so that that question is immaterial. The sureties make no claim that they signed the bonds with any understanding that they were or were not copartners. On the face of the contracts and bonds, they appear to have been partners, and there was some evidence to support that theory, so far as appellants' rights are concerned.

The judgment is affirmed.

NOTE.—Reported in 101 N. E. 10. See, also, under (1) 5 Cyc. 753; 28 Cyc. 1039; (2) 5 Cyc. 742; (3, 5) 28 Cyc. 1040, 1041; (4) 5 Cyc. 756, 757; (6) 28 Cyc. 1041; (8) 5 Cyc. 758; (9) 32 Cyc. 106; (10, 11) 32 Cyc. 127; (12) 32 Cyc. 89; (13) 32 Cyc. 138; (14) 32 Cyc. 57, 69; (15) 32 Cyc. 149, 184; (16) 2 Cyc. 223; (17) 2 Cyc. 156; (18) 2 Cyc. 190; (19) 32 Cyc. 67. As to the effect of adding materially, in a statutory bond, to the conditions prescribed by statute, see 67 Am. Dec. 772. As to public buildings, etc., as subjects of mechanics' liens, see 27 Am. Rep. 83. As to liens of material men, see 79 Am. Dec. 268. As to what generally will release or discharge a surety, see 28 Am. St. 691. As to material alteration of the contract and its effect on the surety, see 6 Am. St. 459. On the question of the nature of labor or materials which will support an action on a contractor's bond, see 43 L. R. A. (N. S.) 162. As to the right of subcontractor, materialman, or laborer to maintain action on contractor's bond to owner, see 27 L. R. A. (N. S.) 573. On the effect of invalidity of contract for public work on the liability of the contractor's bondsmen for material, etc., furnished in carrying out the contract, see 13 L. R. A. (N. S.) 793. For implied power to incorporate in contractor's bond a requirement that the contractor shall pay laborers and materialmen, see 11 L. R. A. (N. S.) 1028.