## EDWIN S. HOVEY *versus* ALMON L. HOBSON.

The statutes of this State relating to real actions afford the tenant no defence on the ground that the purchase of the demandant's title constituted maintenance or champerty.

EXCEPTIONS from the ruling of RICE, J.

WRIT OF ENTRY. The demandant had introduced his evidence of title. The counsel of the tenant moved the Court to direct a nonsuit, on the ground that the testimony (elicited on cross-examination of plaintiff's witness) showed that the purchase of the premises demanded, by the plaintiff, constitutes champerty and maintenance. The motion was sustained and nonsuit directed by the presiding Judge. The demandant excepted.

*A. Merrill*, in support of the exceptions.

*Rand & H. P. Deane*, contra.

The opinion of the Court was drawn up by

DICKERSON, J.—Writ of entry. Exceptions to the ruling of the Judge at *Nisi Prius*, ordering a nonsuit for maintenance and champerty.

Maintenance signifies an unlawful taking in hand, or upholding of quarrels, or sides, to the disturbance or hindrance of common right; as where one maintains another by advice, assistance or money, without any contract to have part of the thing in suit. Champerty is a species of maintenance, and exists where one maintains one side in a suit with the agreement to have part of the proceeds of it. 2 Bouv. Law Dic., 9'; 1 Hawkins' P. C., 535; 1 Russell on Crimes, 176.

All maintenance is strictly forbidden by the common law, from motives of public policy, as having a tendency to oppression, by encouraging and assisting persons to persist in suits which they would not otherwise venture upon. For all offences of this kind the offender is not only liable, at common law, to an action of maintenance at the suit of the party aggrieved, but also to be indicted as an offender against public justice. 1 Hawkins' P. C., 543.

The stat. 32, Henry 8, confirms all the previous statutes upon maintenance and champerty. Chapter 9 of that statute provides, that "no person shall buy or sell, or by any means obtain any pretended rights or titles, &c., to any manors, lands, &c., unless he who sells, &c., his ancestor, or they by whom he claims, have been in possession thereof, or of the reversion or remainder, or take the rents or profits, by the space of a year before the bargain, on pain to forfeit the land, &c., so bought or sold." This statute, and the preceding ones, are in affirmance of the common law. 5 Com. Dig., 17, Title Maintenance; 3 Bac. Abr., 526.

In the early period of the administration of the common and statute law of maintenance and champerty, not only he who laid out his money to assist another in his suit, but he who, by his interest or friendship, saved him an expense he

would otherwise be put to, or officiously gave evidence without being summoned, was held guilty of this offence. This literal construction and application of the law produced such hardships, and was so repugnant to reason and humanity, that it was at length held, by a species of judicial legislation, that, where the person assisting in the suit of another had any interest whatever in the matter in controversy, distinct from that which he had acquired by an agreement with the suitor, he, in effect, became a suitor to that extent and was not guilty of maintenance or champerty. Very soon another step was taken by the courts in the same direction, and this law was held inapplicable, while the alleged maintainor was related to the suitor. Presently still another advance was made, and *Westminister hall* became no longer a closed temple of justice to several other like classes of suitors, but opened its doors also for those who sustained the relation of landlord or tenant, or master or servant to the suitor, or who were his professional advisers, or aided him from motives of charity.

The English common law and statutes against maintenance and champerty had their origin, if not their *necessity*, in a very different state of society from that which prevails at the present time, either in England or in this country. When this doctrine was established, lords, and other large land holders, were accustomed to buy up contested claims against each other, or against commoners with whom they were at variance, in order to harrass and oppress those in possession. On the other hand, commoners, by way of self-defence, thinking that they had title to land, would convey part of their interest to some powerful lord in order through his influence to secure their pretended right. The want of any sufficient written conveyances, and records of land titles, and the feudal relation of *villein* and *liege* lord, afforded great facilities for the combinations and oppressions which followed this state of things. The power of the nobles became mighty in corrupting the fountains of justice, and subverting the freedom and independence of the judicial tribu-

nals. It was to remedy these evils that the law of maintenance and champerty was introduced. Evils of such description and magnitude could exist only in a very imperfect and disordered state of society, where the ermine is entrusted to weak or corrupt hands, and the laws are ill suited to promote the welfare of the people. Instead of instituting a judicial system that should secure the trial of all causes upon their merits, the remedy sought was wholly to exclude a large class of suitors from the courts, for reasons foreign to the merits of their claims; or, in other words, to pronounce a suit vexatious and groundless before it had been tried. It is, perhaps, easier to see how such a rule of law would embarrass the freedom of trade, and the transfer of title, than to understand how it would restrain *unjust* litigation.

The chief safeguards against vexatious suits, which a more enlightened system of jurisprudence has provided, are to be found in the statutes for the limitation of actions, the statutes of frauds, the provision for the action of malicious prosecution, and the costs recoverable against the unsuccessful party. While these provisions operate as checks upon the abuse of the right of litigation, they do not impair the right itself. That they have proved adequate remedies for the evils of groundless litigation, is manifest from the comparative disuse into which the law of champerty and maintenance has fallen in later times, both in England and in this country, and the favorable experience of those States where it has ceased to be in force. Indeed, under a system of jurisprudence which provides such guaranties against vexatious suits, and secures the firm, pure and impartial administration of justice to all, what evils can arise from opening the courts of justice to suitors, where the proceeds of the suit are to be divided between him who brings the suit and him who contributes advice, expense or assistance in its institution or prosecution? Why should a rule of law be recognized and enforced, after the reason for it has ceased?

The English common law of maintenance and champerty,

however, was recognized by the Supreme Court of Massachusetts before the separation of this State from that Commonwealth, and is the law of this State unless it has been changed by statute. In *Walcott* v. *Knight*, 6 Mass., 421, it was held, that the purchase of a dormant title to lands, from a party not seized, by a stranger out of possession, if made wittingly to disturb the tenant in possession, constitutes the crime of maintenance, and is punishable by indictment. In *Swett* v. *Poor*, 11 Mass., 554, the Court say, that the stat. 32, Henry 8, c. 9, against buying and selling pretended titles, merely affirms the common law, and is part of the common law of Massachusetts. *Thurlow* v. *Percival*, 1 Pick., 415 ; *Lothrop* v. *Amherst Bank*, 9 Met., 489.

It was with a spirit and purpose kindred to that exhibited by the English courts in recent times, in their efforts to break the shackles which an age of feudalism had imposed upon the freedom of civil jurisprudence, that the Legislature of this State enacted, that "a person owning real estate and having a right of entry into it, whether seized of it or not, may convey it, or all his interest in it, by a deed to be acknowledged and recorded." R. S. c. 73, § 1.

Sec. 4 of the R. S., c. 104, provides that "the demandant need not prove an actual entry under his title ; but proof that he is entitled to such an estate in the premises as he claims, and that he has a right of entry therein, shall be sufficient proof of his seizin."

These statutes dispense with the formality of livery of seizin, required by the common law, and by statute 32, Hen. 8, c. 9, and put every person who brings a writ of entry upon the strength of his own title. If he has the ownership, and the right of entry, his right to maintain his action is perfect. The meaning of these statutes is clear and unambiguous as language can make it. If the legislature had intended to make cases tainted with maintenance and champerty exceptions to their operations, it would have used language suited to signify such intent ; but they contain no exceptions, qualifications, or limitations ; are abso-

lute in their terms and complete in their application to the subject matter. It makes no difference, in the purview of these statutes, whether the purchaser knew of the disseizin, when he made the purchase, or took the conveyance to aid the grantor in the prosecution of his claims, or to share the proceeds with him; they place property which a disseizee owns, and has a right of entry to, upon the same footing in respect to the right of conveyance with other property where the elements of ownership and seizin are united. The authority to interpolate exceptions into a statute by judicial construction, implies the authority to dispense with its actual requirements; this Court can do neither. Any other construction of these statutes is unauthorized by their spirit, contrary to their language, and subversive of the objects for which they were enacted. *Austin* v. *Stevens*, 24 Maine, 527; *Pratt* v. *Pierce*, 36 Maine, 448.

The learned counsel for the defendant has requested us to revise the decision in *Pratt* v. *Pierce*, and we have re-examined that case with some care. Our researches, however, have but confirmed our convictions of the correctness of that decision. We cannot overrule it without practising a species of judicial legislation for which this Court has as little taste as authority; but should it ever so far transcend its duty as to enter that field of experiment, it is to be hoped, that it will not be to thwart the purposes of beneficent legislation, by substituting therefor doctrines which had their origin in a semi-barbarous age, and which have long since fallen into disrepute with the occasion which elicited them.

The plaintiff having introduced his recorded deed of the demanded premises, and shown the heirship of his grantor together with his right of entry, was entitled to maintain his action, unless the defendant showed a defect in his title, or a better and paramount title in himself. The defendant showed no title in himself, but relied upon defeating the plaintiff's action on account of the taint of maintenance and champerty. We have before seen that it was not competent for the defendant to defeat the plaintiff's action for this

cause; and, therefore, the testimony upon this point, elicited from the witness Merrill, in cross-examination, against objection, having no legal effect upon the issue, was improperly admitted. The plaintiff had a right to have his cause tried, unembarrassed by such testimony.

*Exceptions sustained.　Nonsuit taken off,*

*and cause to stand for trial.*

APPLETON, C. J., and WALTON J., concurred.

CUTTING, J., concurred, on the authority of the case of *Pratt* v. *Pierce*, 36 Maine, 448.

BARROWS, J.—I concur in the result reached in this opinion, because, the Supreme Court of this State, in the case of *Pratt* v. *Pierce*, 36 Maine, 448, gave a certain construction to the provisions of c. 91, § 1, of R. S. of 1841, which construction the Legislature must be considered as adopting by the subsequent substantial reënactment of those provisions in c. 73, § 1, of R. S. of 1857, with the decision of the Court in *Pratt* v. *Pierce* before them. *Myrick* v. *Hasey*, 27 Maine, 9; *Rutland* v. *Mendon*, 1 Pick., 154.

Such legislation, following such a decision, undoubtedly swept away the barriers which the wisdom of the common law and ancient enactments had raised to protect the community and the courts from the vile and vexatious practices of the speculator in dormant titles, who foments litigation from the most sordid motives, and perverts the principles which were designed to maintain justice, to the furtherance of his own base ends.

Why it should have been held, where a statute removed a technical bar to a recovery in cases where a party plaintiff had contracted innocently, in ignorance of the facts, that a formal exclusion, *by the law making power*, from its beneficent operation, was necessary to prevent him whose very standing in court accrued by the perpetration of an offence *malum in se* from availing himself of it, it is useless now to inquire. Indeed, the subsequent action of the Legislature precludes the inquiry. It seems to be now the doc-

trine of the law, that, no matter how deep "the taint of maintenance and champerty," the demandant in a real action is not now required to come into court with clean hands, but may successfully invoke the aid of the courts to enforce claims which are based upon a positive offence against good morals if not against law. I cannot say that it seems to me a very satisfactory advance from "the semi-barbarous times" when a different doctrine prevailed.

NOTE BY DAVIS, J.—I dissent from Judge DICKERSON's opinion, as I do from *Pratt* v. *Pierce,* as applicable to this case. Where one buys a *lawsuit,* and takes a *deed* merely as *ancillary,* to enable him to *carry on* the suit *in his name,* for the benefit of both parties, it is *maintenance;* and I think such facts a good defence. If we have any decisions to the contrary, the sooner they are *reversed,* the better.

But, in a real action, such facts can be proved only *in defence,* under a *special plea,* or special brief statement. Whether they are *proved* is a question of fact for the *jury.* Therefore, if the plaintiff makes out his case, on the matter of *title,* the Judge has no right to order a *nonsuit* on the ground that he has also proved a good *defence.* That should be submitted to the *jury.* •