Hart *et al. v.* The State, *ex rel.* Rock.

No. 13,146.

## HART ET AL. *v.* THE STATE, EX REL. ROCK.

GRAVEL ROAD.—*Contractor's Bond.*—*Mistake.*—Mistakes in a bond given pursuant to the statute to secure the performance of a contract for the construction of a free gravel road, may be corrected, under section 1221, R. S. 1881, so as to give the bond the effect intended by the law.

SAME.—*Liability of Sureties.*—The obligors in a bond executed by a contractor to secure the construction of a free gravel road are not liable for debts incurred by the contractor in the prosecution of the work, in the absence of a condition to that effect, unless a mistake is averred and proved.

SAME.—*Sale of Claims.*—*Champerty.*—A sale of claims for work performed and materials furnished in the construction of a free gravel road is not champertous, but is authorized by the code, and the assignee becomes the real party in interest.

CHAMPERTY.—*Assignment of Claim.*—An assignment of a claim can not be defeated by the debtor by alleging facts showing that a champertous agreement was entered into by the plaintiff and the original holder of the claim at the time of the assignment.

From the Hancock Circuit Court.

*W. R. Hough,* for appellants.

*J. A. New* and *J. W. Jones,* for appellee.

ELLIOTT, C. J.—The complaint of the relator is based on a bond executed by Hays as principal, and the other appellees as sureties. The condition of the bond is thus expressed:

" The conditions of the above obligation are such that whereas, the above bound Orlando Hays has been awarded the contract for constructing sections 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, of the Pleasant Hill and Manilla Free Gravel Road, in Shelby county, Indiana, and has entered into a written contract with the engineer and superintendent of said free gravel road to construct and complete said sections 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, of said road on or before the — day of ——, 188–, according to the specifications prepared therefor by

said engineer and superintendent, and in compliance with the provisions and requirements of the notice of the letting of the contract for the construction of said road :

" Now, if said Orlando Hays shall construct and complete said sections 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, of said road, according to the provisions of the contract entered into with the engineer and superintendent, then this obligation to be void, otherwise to remain in full force and effect."

It is averred that a written contract was entered into between Hays and the board of commissioners of Hancock county for the construction of the sections of the gravel road mentioned in the bond, and that the bond was executed under the provisions of the act of March 14th, 1877. It is also averred that by the mistake of the scrivener who drew the bond it was made payable to the board of commissioners instead of to the State of Indiana, and that by the further mistake of the scrivener the bond was not conditioned for the payment of debts incurred by the contractor in the prosecution of the work, or for the payment of laborers and persons furnishing material. It is further averred that the claims of the persons named were assigned to the relator ; that the contractor became indebted to the persons named for work and for materials, and the particulars of the indebtedness are properly set forth. The complaint also alleges that the relator made demand for payment of the sums due before the action was instituted.

The title of the act of March 14th, 1877, does not include more than one subject, and the provisions relating to the execution of bonds by contractors are fully within the title.

The decision in *Faurote* v. *State, ex rel.*, 110 Ind. 463, settles the question as to the right of the relator to have mistakes in the bond corrected. The bond was given pursuant to a public statute, and under the provisions of section 1221, R. S. 1881, the parties in interest had a right to have mistakes corrected so as to give the bond the effect the law intended it should have.

The persons who performed labor and furnished materials had a right to sell their claims. A sale of such claims is not champertous. There is no more reason for holding such sales champertous than there is for holding the sale of a claim for work and labor done on a farm, or of a claim for merchandise. Our code expressly recognizes the right to sell and assign all such claims, and authorizes the assignee to maintain an action in his own name as the real party in interest.

After the sale and assignment of the claims to the relator, he became the real party in interest, and the demand was properly made by him.

The answer of the sureties is, in substance, this : The assignors and the relator, at the time the assignment was made, entered into an agreement wherein the relator undertook to collect the claims at his own expense, and when they were collected to pay to each of the claimants one-half of his claim " of the money which should be by him collected ;" in consideration of this undertaking the assignors agreed that the relator should retain one-half of the amount collected on each claim to compensate himself for his services, and to reimburse him for costs and expenses incurred.

To this answer a demurrer was sustained, and this the appellant's counsel assert was error, because the agreement between the assignors and the relator was champertous and void. The rule invalidating champertous agreements is still in force in this State, although much restricted by the provisions of the code. *Scobey* v. *Ross,* 13 Ind. 117 ; *Quigley* v. *Thompson,* 53 Ind. 317 ; *Greenman* v. *Cohee,* 61 Ind. 201 ; *Board, etc.,* v. *Jameson,* 86 Ind. 154, 161. The allegations of the answer would carry the case within our own decisions, and within those of other courts, if the question at issue arose directly on the contract. 3 Am. and Eng. Ency. of Law, 68. It would, indeed, be impossible to discern any difference in principle between this case and the cases of *Scobey* v. *Ross, supra, Coquillard* v. *Bearss,* 21 Ind. 479, and *Lafferty*

v. *Jelley*, 22 Ind. 471, if the contract were relied upon as a defence by a party sued upon it, but here the parties who rely upon the contract are not endeavoring to prevent its enforcement directly against them, for what they seek to do is to defeat an assignment. If the action had been brought by the original claimants, no question of champerty would have arisen, so that the alleged champertous contract only comes into question collaterally. We, therefore, feel bound to hold under the ruling in *Allen* v. *Frazee*, 85 Ind. 283, that the assignment is not defeated.

We find no evidence of any mistake in the preparation of the bond, and we can not agree with the view of counsel that the statute of its own vigor imported conditions into the instrument. It may be true that to prove the mistake in naming the obligee, it is unnecessary to do more than prove the proceedings in which the bond was given, but more is necessary where it is sought to add a condition to the bond. As the instrument is written it simply obligates the sureties of the contractor to answer for his failure in his undertaking to construct and complete the sections of the road designated " according to the provisions of the contract entered into with the engineer and superintendent." We can not perceive any legal reason upon which the obligors can be held in this action without evidence that they agreed to be bound for debts due persons performing labor and furnishing materials. Some evidence must, in such cases as this, be given in proof of the averment of a mistake in reducing the contract to writing. Sureties can not be held beyond the plain import of their obligation, where, as here, the obligation is clear and unambiguous on its face, without some evidence of an intention or agreement to be bound beyond the terms and conditions of their bond. The board had a right to take a bond to secure the performance of the work according to the contract, and, so far as this record shows, this is the only bond that was taken. R. S. 1881, section 5095. At all events, there is no evidence that the

sureties agreed to be bound beyond the term of the bond, or that the bond does not fully express the obligation of the sureties.

We do not understand our cases to decide, as counsel assert, that " in case the mistake is not patent a suggestion of such mistake in the complaint is sufficient for the case." It may be sufficient, as a matter of pleading, to suggest the mistake, but when it comes to the question of establishing a cause of action there must be evidence of the mistake or the plaintiff will fail. Where a bond appears to be complete and perfect on its face, with conditions fully expressed, a new condition can not be added, unless there is satisfactory evidence of a mistake. If the board of commissioners could not rightfully have accepted such a bond as the one involved in this controversy, in proceedings for the construction of roads, there might be some tincture of reason in the contention that the statute entered into it so fully as to supply conditions and terms; but it is plainly otherwise where, as here, the statute authorizes just such bonds as the one before us to be taken in proceedings such as those in which this bond was taken.

Judgment reversed, with instructions to sustain the appellant's motion for a new trial.

Filed May 28, 1889.

### On Petition for Rehearing.

Elliott, C. J.—Counsel for the appellee erroneously assume that there is a conflict between the opinion in this case and that of *Faurote* v. *State, ex rel.*, 110 Ind. 463. There is not the slightest conflict, for the ruling in the case cited is fully approved and followed. The counsel confuse the questions in the two cases; in the former the question arose upon a complaint containing proper allegations as to the scrivener's mistake in drafting the bond, while in the case before us the question is, can sureties be held beyond the terms of the bond, where the words are unambiguous, constitute a complete con-

tract and there is not a particle of evidence of any mistake, nor, indeed, an atom of evidence tending to show that the contract does not mean exactly what it says?

Filed September 18, 1889.