(October 11, 1912.)

MERCHANTS' PROTECTIVE ASSOCIATION, Appellant, v. S. JACOBSEN, Respondent.

[127 Pac. 315.]

CHAMPERTY AND MAINTENANCE — COMMON-LAW RULE NOT IN FORCE— SUPPLANTED BY STATUTE.

(Syllabus by the court.)

1. The common-law doctrine of champerty and maintenance was repudiated by the supreme court of California as early as 1863, and it was held that the common-law doctrine on the subject was incompatible with our institutions and form of government and that the subject was governed by statute alone. The statutes of Idaho were copied from the California statutes, which had thus been considered and construed by the court of the state from which they were taken, and the decision of the California court on this subject is presumed to have been accepted and adopted by the legislature of this territory.

2. The common-law rule of champerty and maintenance is not in force in this state, and under the provisions of sec. 4900 of the

Rev. Codes of this state, the measure and mode of compensation of attorneys is left to the agreement, express or implied, entered into between the attorney and client, and so long as such agreement is not contrary to good morals or sound public policy, it will be enforced by the courts.

3. Under the provisions of sec. 6524 of the Rev. Codes of this state, an attorney at law is prohibited and forbidden, either directly or indirectly, buying any evidence of debt or thing in action with intent of bringing suit thereon, and for a violation of this statute the attorney is held guilty of a misdemeanor.

4. Although the doctrine of champerty and maintenance does not prevail, the courts will refuse to grant relief or enforce contract where the contract is contrary to good morals or sound public policy.

APPEAL from the District Court of the Fourth Judicial District for Elmore County. Hon. Edward A. Walters, Judge.

Action for debt. Judgment for defendant and plaintiff appealed. *Reversed.*

T. Bailey Lee, for Appellant.

"In the United States the doctrines of maintenance and champerty have not generally found favor." (*Roberts v. Cooper*, 20 How. (U. S.) 467, 15 L. ed. 969; *Boon v. Chiles*, 10 Pet. (U. S.) 177, 9 L. ed. 388; *Barrell v. Mohawk*, 8 Wall. (U. S.) 153, 19 L. ed. 406; *Armstrong v. Toler*, 11 Wheat. (U. S.) 258, 6 L. ed. 468; 3 Am. & Eng. Ency. of Law, 1st ed., 73.)

It does not exist in California. (*Mathewson v. Fitch*, 22 Cal. 86; *Howard v. Throckmorton*, 48 Cal. 482; *Ballard v. Carr*, 48 Cal. 74; *Hoffman v. Vallejo*, 45 Cal. 564.) Nor in New Jersey, Michigan, Texas or Arkansas. (*Hassell v. Van Houten*, 39 N. J. Eq. 105; *Lytle v. State*, 17 Ark. 608.)

These authorities explain the old common-law rule, and announce the nonexistence in this country of ancient British conditions which made such a rule at one time imperative for the protection of the general commoner. While such a contract in its executory form might be subject to suspicion, it becomes purged of such suspicion when there appears an hon-

est execution, partial or entire.   (6 Cyc.° 859 (B); 9 Cent. Digest, tit. "Champerty and Maintenance," par. 26.)

W. C. Howie, for Respondent.

Even with attorneys and collection agencies, if the attorney or collector agrees in addition to performing the services to pay the costs of court and other expenses, etc., it is almost universally held that the agreement to pay costs, etc., renders the agreement void for champerty (*Kelly v. Kelly*, 86 Wis. 170, 56 N. W. 637; *Phelps v. Manecke*, 119 Mo. App. 139, 96 S. W. 221; *Geer v. Frank*, 179 Ill. 570, 53 N. E. 965, 45 L. R. A. 110; *Barngrover v. Pettigrew*, 128 Iowa, 533, 111 Am. St. 206, 104 N. W. 904, 2 L. R. A., N. S., 260; *Croco v. Oregon Short Line Ry. Co.*, 18 Utah, 311, 54 Pac. 985, 44 L. R. A. 285; *Dahms v. Sears*, 13 Or. 47, 11 Pac. 891); but as this is a Utah contract and of course would be governed by the decisions of the state of Utah, I call special attention to *Nelson v. Evans*, 21 Utah, 202, 60 Pac. 557, and *In re Evans*, 22 Utah, 366, 83 Am. St. 794, 62 Pac. 913, 53 L. R. A. 952; also *Croco v. Oregon Short Line Ry. Co., supra.*

AILSHIE, J.—This is an appeal from a judgment sustaining a demurrer to plaintiff's complaint and dismissing plaintiff's alleged cause of action.   The material allegations of the complaint are as follows:

Appellant is a corporation organized under the laws of the state of Utah, carrying on a general business of publishing credit ratings of firms and corporations and furnishing commercial information and adjusting and collecting delinquent and disputed accounts and claims for an agreed commission or rate of compensation.   On about the 3d of June, 1903, respondent delivered to appellant for collection a certain claim against Simonds Bros. of Ft. Wayne, Ind., for the sum of about $1,160, together with $108.70 accrued interest, and employed and instructed the appellant to collect the same on certain agreed rates of commission or compensation.   Appellant began negotiations for the collection of the claim, and in order to defray the expenses demanded of the respondent

the sum of $30, which respondent paid.   Appellant thereupon continued negotiations and employed a firm of lawyers in Ft. Wayne to assist in the prosecution of the claim.   These transactions and negotiations continued until the 10th of July, 1905, when, in view of further costs and expenditures and the probability of having to prosecute an action against the debtor, a modified or new contract was entered into.   This new or modified contract consisted of an assignment by the respondent to the plaintiff of an undivided one-half interest in the claim, under an agreement that the plaintiff should bear all further expenses of the proceedings and furnish any bonds that might be necessary, and that after the claim was finally adjusted or collected the appellant would return to respondent the sum of $30, which had already been paid by respondent to appellant toward defraying costs and expenses. The appellant proceeded with its negotiations but without success, and thereafter and on or about the 7th of June, 1907, and while the plaintiff was still attempting to collect and adjust the claim, the respondent, without notice to appellant, entered into an agreement with the debtor, Simonds Bros., whereby the claim was paid directly to respondent, and Simonds Bros. were released and discharged from further liability.   The appellant thereupon made demand on respondent for one-half the sum collected, less the sum of $30, which had been advanced for costs, and upon refusal by respondent to pay commenced this action.   Respondent demurred to the complaint, and the demurrer was sustained, on the ground that the contract was in violation of the common-law doctrine of champerty and maintenance, which rule of law, it is maintained, is in force in this state.

The first question to be determined on this appeal is, whether the common-law rule of champerty prevails in this state.   Champerty, which seems to be a species of the ancient law of maintenance, consisted in supporting or maintaining a suit for someone else in consideration of a bargain or agreement to have a part of the thing in dispute or some profit out of the results of the litigation or an agreement to divide the receipts derived from the suit or action.   Maintenance of

causes of action was denounced by the Roman law in the strongest terms. (Institutes, Book 4, Title 16; 4 Blackstone's Commentaries, 135.) It was adopted in England as a part of the feudal system, and but for the feudal system would doubtless have found no place in English common law. It was subsequently enacted by parliament into written law by statute Westminster I, c. 25; 3 Edw. I; 28 Edw. I, c. 11; 32 Henry VIII, c. 9. When first adopted in England, it had special reference to suits and actions involving title and right of possession to real property. (*Lytle v. State,* 17 Ark. 608.) At that time England was infested (I think "infest" correctly expresses it) with great feudal lords and barons, and class distinction prevailed everywhere. (Vol. 2, Hume's History of England, p. 320.) It is said by law-writers that this law was invoked for the purpose of preventing great men of the times using their power and influence in supporting questionable titles against the weak and oppressed of various degrees and distinctions, and thus, perhaps, obtaining judgments and decrees to which they were not entitled. A somewhat careful examination of the early authorities, however, and the results accomplished thereunder tends at least to leave the impression on one's mind that this doctrine may have been invoked as much for the protection of the feudal lords against each other as for their weaker and less influential subjects. (See *Hovey v. Hobson,* 51 Me. 62; *Wright v. Meek,* 3 G. Greene (Iowa), 472.) Feudal tenure never prevailed in this country, nor has class distinction had any place with us. The poor man who has a just and righteous cause of action may be without means to prosecute his action, and therefore be under the necessity of selling or hypothecating a part of his claim in order to obtain the means with which to prosecute it. The mere fact that he does so cannot affect the result of his action or work any injustice either on his adversary or the public. One man is no more powerful in the eyes of the law than another. For a learned and interesting discussion of the origin of this doctrine, see *Lytle v. State,* 17 Ark. 608. However this may be, it seems quite clear to us that no such condition has ever prevailed in this country as would

require or necessitate the application of such a doctrine in the law of this country.

There is a great diversity of opinion among the courts as to whether the common-law doctrine of champerty ever became a part of the body of the common law of this country. In Indiana (*Hart v. State,* 120 Ind. 83, 21 N. E. 654, 24 N. E. 151), Kansas (*Aultman v. Waddle,* 40 Kan. 195, 19 Pac. 730), Kentucky (*Lucas v. Allen,* 80 Ky. 681), Maine (*Hovey v. Hobson,* 51 Me. 62), Massachusetts (*Ackert v. Parker,* 131 Mass. 436), Missouri (*Duke v. Harper,* 66 Mo. 51, 37 Am. Rep. 314), Oregon (*Brown v. Bigne,* 21 Or. 260, 28 Am. St. 752, 28 Pac. 11, 14 L. R. A. 745), Rhode Island (*Orr v. Tanner,* 12 R. I. 94), Utah (*Croco v. O. S. L. R. Co.,* 18 Utah, 311, 54 Pac. 985, 44 L. R. A. 285), Vermont (*Hamilton v. Gray,* 67 Vt. 233, 48 Am. St. 810, 31 Atl. 315), Wisconsin (*Miles v. Mutual Reserve Fund L. Assn.,* 108 Wis. 421, 84 N. W. 159), District of Columbia (*Matthews v. Hevner,* 2 App. Cas. (D. C.) 349; *Peck v. Heurich,* 167 U. S. 627, 17 Sup. Ct. 927, 42 L. ed. 302), Illinois (*Thompson v. Reynolds,* 73 Ill. 11), Minnesota (*Gammons v. Johnson,* 69 Minn. 488, 72 N. W. 563), Montana (*Quirk v. Muller,* 14 Mont. 467, 43 Am. St. 647, 36 Pac. 1077, 25 L. R. A. 87), the doctrine seems to have been adopted in a more or less modified form, while it has been wholly repudiated in Arkansas (*Lytle v. State,* 17 Ark. 608), California (*Howard v. Throckmorton,* 48 Cal. 482), Connecticut (*Richardson v. Rowland,* 40 Conn. 565), Delaware (*Bayard v. MacLane,* 3 Harr. (Del.) 139), Iowa (*Wright v. Meek,* 3 G. Greene (Iowa), 472), Maryland (*Schaferman v. O'Brien,* 28 Md. 565, 92 Am. Dec. 708), Michigan (*Wildey v. Crane,* 63 Mich. 720, 30 N. W. 327), New Jersey (*Schomp v. Schenck,* 40 N. J. L. 195, 29 Am. Rep. 219), Nebraska (*Omaha R. & R. Co. v. Brady,* 39 Neb. 49, 57 N. W. 767), Texas (*Wheeler v. Riviere* (Tex. Civ.), 49 S. W. 697), Tennessee (*Sherley v. Riggs,* 11 Humph. (Tenn.) 53), and West Virginia (*Lewis v. Broun,* 36 W. Va. 1, 14 S. E. 444).

California, the state from which we took the great body of our original statutes, repudiated this doctrine as early as 1863, and in *Mathewson v. Fitch,* 22 Cal. 86, the supreme

court, directing its attention especially to the doctrines of maintenance, held such "laws inapplicable to this country" and that the only laws on the subject applicable to the state of California were such as had been specifically enacted into the statutes of the state.   Thereafter and in 1872, the legislature of that state enacted sec. 161 of the Penal Code, which is the identical language of our sec. 6524, Rev. Codes.   Our statute was evidently copied from the California statute, and reads as follows: "Every attorney who, either directly or indirectly, buys or is interested in buying any evidence of debt or thing in action, with intent to bring suit thereon, is guilty of a misdemeanor."   Our attention has not been called to any California case which has changed or modified the rule announced in *Mathewson v. Fitch* since the adoption of the foregoing penal statute in 1872.   It is clear, however, that it was the intent of our legislature to prohibit attorneys purchasing any evidence of debt or thing in action with the intent of bringing suit thereon.   On the other hand, our statute (sec. 4900, corresponding with sec. 1021, Cal.) leaves the measure and mode of compensation of attorneys to the agreement, "express or implied," between the attorney and client.   In the light of the foregoing statute and the decisions of the courts of California prior to our adoption of these statutes, it seems to us that it was not contemplated by the lawmakers that the common-law doctrine of champerty and maintenance should prevail in this territory, and that the lawmakers believed that the only rule governing these matters would be such as might be prescribed by the legislature, and hence the two statutes above named—that is, secs. 4900 and 6524.   (See *Wildey v. Crane,* 63 Mich. 720, 30 N. W. 327.)   Without invoking that doctrine, the courts of this country have found ample authority to protect.the community and litigants as well against unconscionable and oppressive contracts and such transactions and agreements as are contrary to good morals and sound public policy.   Where a contract, if given full force and effect by the court, would have the effect of stirring up strife and provoking unfounded and unjust litigation, the courts will, as they always have, inter-

pose their authority to protect the community, and the litigants as well, by refusing relief on any such contracts. This principle is well enunciated by the supreme court of Oregon in *Brown v. Bigne*, 21 Or. 260, 28 Am. St. 752, 28 Pac. 11, 14 L. R. A. 745.

Viewed in the light of what has been said above, we fail to find anything in the contract in this case that renders it obnoxious to any statute of this state or contrary to good morals or sound public policy. It does not appear that any of the officers or agents of appellant were attorneys or that this purchase was made by an attorney or for the purpose or with the intent of commencing an action thereon. It is true that an action was contemplated in the event the debt should not be paid without action. That was legitimate and proper. The assignment of a half interest in the claim was apparently made for the purpose of compensating the appellant for its labor and outlay in making the collection. This claim and account owned by the respondent was property and a property right, and under the laws of this state a man may sell any property or property right which he possesses, and what he may lawfully sell another person may lawfully buy, unless specifically forbidden and prohibited so doing by statute.

This case is quite different in its facts from the Utah case of *Nelson v. Evans*, 21 Utah, 202, 60 Pac. 557, cited and relied on by counsel for respondent. In that case a firm of attorneys employed in a case entered into a contract with one Nelson, whereby they agreed to give him "one-third of one-half of any amounts which may be collected, either on compromise or otherwise, in the case of *Alfred H. Nelson, etc., v. The Southern Pacific Co.*, in consideration of said Thomas Nelson furnishing witnesses necessary to prosecute said case." The court held that this contract was "champertous and against public policy." The same view was taken by the Utah court in *In re Evans*, 22 Utah, 366, 83 Am. St. 794, 62 Pac. 913, 53 L. R. A. 952. We doubt very much if any court would disagree with the Utah court in holding such a contract contrary to good morals and sound public policy, and

this would be true whether or not the doctrine of champerty and maintenance prevails in the jurisdiction.

The demurrer in this case should have been overruled, and the defendant should have been required to answer. The judgment will therefore be reversed and the cause is remanded, with direction to take further proceeding in accordance with the views herein expressed. Costs awarded to appellant.

Sullivan, J., concurs.

STEWART, C. J., Concurring Specially.—The only question presented by the record in this case is whether the statutes of the state, to wit, secs. 4900 and 6524, were intended by the legislature as enactments controlling contracts between a client and his attorney in the employment of the attorney by the client.

Champerty, as defined by Blackstone, is "a bargain with a plaintiff or defendant *campum partire,* to divide the land or other matter sued for between them if they prevail at law, whereupon the champertor is to carry on the party's suit at his own expense." (4 Black. Com. 135.) Lord Coke, in defining champerty, says: "To maintain to have part of the land or anything out of the land, or part of the debt or other thing in plea or suit." This definition of Coke (Co. Litt. 368–b) is followed by many of the courts of this country and is cited in vol. 5, Am. & Eng. Ency. of Law, p. 816 et seq.

The generally accepted definition of champerty, as above stated, is recognized and applied both in England and in most of the states, and the courts have held that every contract or agreement into which champerty enters as a consideration is illegal and void, and where an action is brought directly upon a champertous contract, that champerty is a good defense.

It is also a well-recognized rule adopted by the courts of the United States that where champerty is not recognized or approved, and the legislature of a state has enacted a statute, such statute has modified the application of the generally accepted definition of champerty to the statutory provisions.

This seems to be the general rule followed by the courts of the United States, and that where statutes have been enacted, the courts determine the question whether a contract made between a party and the attorney violates the provision of the statute.

Sec. 18, Rev. Codes, provides: "The common law of England, so far as it is not repugnant to, or inconsistent with, the constitution or laws of the United States, in all cases not provided for in these Revised Codes, is the rule of decision in all courts of this state." Under this provision of the statute, the common law of England upon the subject of champerty is immaterial and not involved in this case, even if the statute is not as comprehensive as the common law. This court should look to the statute alone as a guide in determining whether or not a contract between an attorney and client is "to maintain to have part of the land or anything out of the land, or part of the debt or other thing in plea or suit."

Applying this rule to the facts in this case, as stated in the majority opinion, it is clear there was no violation of the provisions of secs. 4900 and 6524.