Justice EISMANN,
specially concurring.
I concur in the majority opinion and write to further explain that the only arguments made by the Deputy Attorney General on behalf of the Secretary of State were frivolous and disingenuous, thereby requiring an award of attorney fees to the Coeur d’Alene Tribe. In the brief filed on behalf of the Secretary of State, the Deputy Attorney General argued only one issue—“whether § 67-505 imposes on him the ministerial, non-discretionary duty urged by Petitioner.” The Deputy Attorney General reiterated, “That substantive question, again, is the only issue which Respondent addresses.”
The Deputy Attorney General’s frivolous argument regarding Idaho Code section 67-505.
Article IV, § 10, of the Idaho Constitution provides, insofar as is relevant, “Any bill which shall not be retened by the governor to the legislature within five (5) days (Sundays excepted) after it shall have been presented to him, shall become a law in like manner as if he had signed it.” It is uncon-tradicted that the Governor received Senate Bill No. 1011 on Monday, March 30, 2015, and that he did not return the bill to a senator until six days later (excluding Sunday) on Monday, April 6, 2015. Thus, it is absolutely clear that the bill became law pursuant to the Idaho Constitution because it was not returned to the legislature timely. The only substantive issue is whether under those facts, the Secretary of State had a nondiseretionary duty under Idaho Code section 67-505 to certify the bill as law.
That statute is unambiguous. It states, insofar as is relevant, as follows:
Every bill which has passed both houses of the legislature, and has not been returned by the governor within five (5) days, thereby becoming a law, is authenticated by the governor causing the fact to be certified thereon by the secretary of state in the following form: “This bill having remained with the governor five (5) days (Sundays excepted), and the legislature being in session, it has become a law this.... day ofwhich certifi *527 cate must be signed by the secretary of state and deposited with the laws in his office.
I.C. § 67-505 (emphases added).
If a bill passed by both houses is not returned by the governor within five days, the secretary of state is statutorily obligated by Idaho Code section 67-505 to certify that the bill has become law. As the statute is written, the governor’s failure to return a vetoed bill timely is the required authentication that causes the secretary of state to execute the required certificate. The statute does not require any further action by the governor. Whether section 67-505 should be construed as written was the only substantive issue.
Idaho Code section 67-505 states that “[e]very bill which has passed both houses of the legislature, and has not been returned by the governor within five (5) days, thereby becoming a law, is authenticated by the governor.” (emphasis added). The issue, as framed by the Deputy Attorney General, is what the meaning of the word “is” is.
In the argument in his brief regarding section 67-505, the Deputy Attorney General began by miseharacterizing the statute and asserting that “is” authenticated by the governor means “shall be” authenticated by the governor. The Deputy Attorney General wrote:
That statute, however, requires the Secretary of State to certify as law a bill “authenticated by the governor” as “halving] not been returned by the governor within five (5) days”; the Governor made no such authentication here and there is nothing for the Secretary of State to certify pursuant to § 67-505.
He repeated that miseharacterization at the end of his argument by writing:
Respecting the legislative transaction between the Governor and the Legislature, the Constitution, implementing statutes and case law allow for three circumstances in which the Secretary of State can certify a bill as law:
1. Authentication by the Governor that the bill becomes law without his signature under Idaho Code § 67-505;
2. Authentication by the originating house that the bill has not been returned in accordance with Article IV, § 10 and thereby becomes law without the Governor’s signature; or
3. A court order directing the Secretary of State [to] issue the certification under § 67-505 that S. 1011 becomes law without the Governor’s signature.
(emphasis added).
The Deputy Attorney General states that “the Constitution, implementing statutes and ease law allow for three circumstances in which the Secretary of State can certify a bill as law.” He does not cite any provision in the Constitution, in a statute, or in case law that supports that assertion, because there is none. Although he miseharacterizes section 67-505 regarding “authentication by the governor,” there is no mention in the statute of any “authentication by the originating house.” A writ of mandate from this Court can certainly direct the secretary of state to perform his nondiseretionary duty as set forth in section 67-505, but there is nothing in the statute indicating that a writ of mandate is a prerequisite for the secretary of state to do so.
In his argument, the Deputy Attorney General simply misrepresented the statute by rearranging words to make it appear that the governor must take action to authenticate the fact that he had not returned the bill within the required five days. As shown above, the governor’s failure to return that bill within the five-day period is the required certification, which triggers the mandatory requirement that the secretary of state certify the bill as a law. The Deputy Attorney General did not present any authority or cogent argument to support his assertion that the word “is” should be read “shall be.”
The historical record likewise does not support the Deputy Attorney General’s mis-characterization of the statute. The Territory of Idaho was created in 1863. An Act to Provide a Temporary Government for the Territory of Idaho, § 1, 12 Stat. 808, 808-09. That legislation included a provision stating, “If any bill shall not be returned by the governor within three days (Sundays except *528 ed) after it shall have been presented to him, the same shall be a law in like manner as if he had signed it, unless the assembly, by adjournment, prevent its return; in which case it shall not be a law.” Id. § 6, 12 Stat. 808, 811. In 1887, the territorial legislation enacted what has now become Idaho Code section 67-506. As enacted in 1887, the statute stated:
Every bill which has passed both Houses of the Legislature, and has not been returned by the Governor within three days, thereby becoming a law, is authenticated by the Governor causing the fact to be certified thereon by the Secretary of the Territory in the following form: “This bill having remained with the Governor three days (Sundays excepted), and the Legislature being in session it has become a law this day of A.D._,” which certificate must be signed by the Secretary of this Territory and deposited with the laws in his office.
Rev. Stat. of Idaho Territory § 154 (1887). The territorial legislature took a great body of its statutory law from California. Merchants’ Protective Ass’n v. Jacobsen, 22 Idaho 636, 641, 127 P. 315, 317 (1912). In 1852, California had enacted a statute very similar to section 154 (now section 67-505), which stated:
Every Bill which has passed both Houses of the Legislature, and shall not be returned by the Governor within ten days, having thereby become a Law, shall be authenticated by the Governor, causing the fact to be certified thereon by the Secretary of State, in the following form:
“This Bill having remained with the Governor ten days, (Sundays excepted,) and the Senate and Assembly being in session, it has become a Law, this_day of _, A.D. which certificate shall be signed by the Secretary of State, and deposited with the Laws in his Office.
An Act for the Authentication of Statutes Without the Approval of the Governor, ch. 49, § 2, 1852 Cal. Sess. Laws 112, 112-13. Because of the similarity between the two statutes and the fact that the Idaho territorial legislature routinely copied statutes from California, it is apparent that section 154 was copied from the California statute. In copying the statute, the Idaho territorial legislature made a significant change.
The California statute stated that the governor’s failure to return a vetoed bill within the prescribed time period “shall be authenticated by the Governor, causing the fact to be certified thereon by the Secretary of State.” In 1870, the Governor of California failed to return a vetoed bill timely, and he refused to execute the required authentication. As a result, a writ of mandate had to be obtained from the California Supreme Court to command the governor to execute the authentication. Harpending v. Haight, 39 Cal. 189, 1870 WL 857 (Cal.1870). The statute enacted by the Idaho territorial legislature did not include the wording “shall be authenticated by the Governor.” Instead, the wording was “is authenticated by the Governor.” The change in the wording was obviously made to avoid the necessity of obtaining a writ of mandate to command the governor to execute an authentication if he failed to return a vetoed bill timely. Section 154 (now section 67-505) provided that the governor’s inaction—his failure to return the vetoed bill timely—is the authentication, which causes the fact to be certified by the secretary of the territory then and the secretary of state now.
The Deputy Attorney General’s disingenuous arguments regarding the facts.
The undisputed facts are that the Governor received the bill on March 30, 2015, and that the five-day period for vetoing it and returning it to the Senate expired on Saturday, April 4, 2015. On Thursday, April 2, 2015, the Senate adjourned until 1:30 p.m. on Monday, April 6, 2015. The Governor’s veto message is dated April 3, 2015, but the veto would be ineffective unless the bill was returned to the Senate on or before April 4, 2015. Idaho Const, art. IV, § 10.
Idaho Code section 67-504 sets forth a procedure for returning a vetoed bill when the house in which the bill originated has adjourned for the day but not for the session. It states:
If, on the day the governor desires to return a bill without his approval and with *529 his objections thereto to the house in which it originated, that house has adjourned for the day (but not for the session), he may deliver the bill with his message to the presiding officer, clerk, or any member of such house, and such delivery is as effectual as though returned in open session, if the governor, on the first day the house is again in session, by message notifies it of such delivery, and of the time when, and the person to whom, such delivery was made.
Because the Senate had adjourned on April 2, 2015, and would not be back in session until 1:30 p.m. on April 6, 2015, the Governor could return Senate Bill No. 1011 on or before Saturday April 4, 2015, by delivering it to the President of the Senate, Lieutenant Governor Brad Little; to the Secretary of the Senate, Jennifer L. Novak; or to any senator. However, the statute provides that delivery to one of those persons would only be effective “if the governor, on the first day the house is again in session, by message notifies it of such delivery, and of the time when, and the person to whom, such delivery was made.” Id. There is no contention that the Governor did so in this ease.
On April 6, 2015, the Secretary of the Senate presented a letter to the President of the Senate notifying him that Senate Bill No. 1011 had not been returned to her, nor to her knowledge had there been any attempt to return it to her. She also stated that correspondence is routinely returned to her by slipping it under the door of her office, and that other correspondence was slipped under her door and returned “in accordance with Article IV, § 10 and Idaho Code §§ 67-504 & 505.” It is significant that not only was Senate Bill No. 1011 not returned to her, but neither was any correspondence in accordance with Idaho Code section 67-504 regarding that bill.[7]
During oral argument by the Deputy Attorney General, his mischaracterization of Idaho Code section 67-505 was pointed out by quoting the entire relevant portion of the statute. He was then asked twice whether he was aware of any compliance with Idaho Code section 67-504, and each time he responded, “I don’t know.” Unless he was willfully ignorant of the facts, those responses were false. He was later asked whether anyone had contended that the Governor had sent a message pursuant to section 67-504, and he avoided the question. He was then asked three times whether he was aware of any compliance with section 67-504, and each time he would not answer the question. His refusal to answer the questions spoke volumes as to what the facts actually were and demonstrated that his strategy was to attempt to obscure the facts rather than confront them.
Later in his oral argument, the Deputy Attorney General stated that “we” do not know whether or not the return of the bill was timely. He was asked, “Are you aware of any contention that it was returned within five days?” He answered: “Yes, the journal. The journal says that it was returned.” He was told: “The journal doesn’t say that. It doesn’t say that it was returned within five days.” He responded: “The journal. The journal. Under the Constitution, the journal is not required to reflect when the legislation was returned.” Thus, on one hand the Deputy Attorney General stated that the Senate Journal showed that Senate Bill No. 1011 was returned within five days, and on the other he stated that it is not reflected in the Senate Journal because the Constitution does not require the Senate Journal to reflect *530 when legislation is returned. Those inconsistent answers reflect a lack of candor. Finally, near* the end of his oral argument, the Deputy Attorney General was again asked whether anyone had contended that the bill was returned to him or her (other than the President Pro Tempore), and the Deputy Attorney General finally answered truthfully, “Not that I’m aware of.”
It is clear that he knew there had been no compliance with section 67-504, because had there been, the message submitted by the Governor in compliance with that statute would be in the possession of the Secretary of State. Any such message would have been delivered to the Secretary of the Senate,[8] and she would have delivered such document to the Secretary of State at the end of the legislative session, receiving from him a certification that he had received it.[9] Thus, the Secretary of State would know whether or not the Governor had submitted to the Senate a message in compliance with Idaho Code section 67-504.
The Deputy Attorney General admitted during oral argument that if Senate Bill No. 1011 had been returned timely, it would be an absolute defense to this request for a writ of mandamus. He was then asked, “Would a competent attorney, representing the secretary of state, make that inquiry?” He answered, “No.” Apparently, his strategy was to be willfully ignorant of the facts. If, in truth, he was ignorant of the facts, he should not have attempted to argue them.
The Deputy Attorney General also argued, “There is a legitimate question before this Court because under 67-504 there is a potential of thirty-seven possible recipients of a returned piece of legislation.” That assertion was patently disingenuous. The President Pro Tempore submitted a letter dated April 6, 2015, to the President of the Senate in which the President Pro Tempore stated: “This communication reflects that Senate Bill 1011 was returned to my office at 8:52 am on April 6, 2015. To the best of my knowledge no earlier return was attempted to my office, nor was I asked to receive such a return at any earlier time.” There is no doubt that the President Pro Tempore had possession of the original bill because until the vetoed original bill and the Governor’s objections to the bill were returned to the Senate, the Senate could not have voted to override the veto. I.C. § 67-503. See also Senate Rule 16.[10] There was only one original of the bill submitted to the Governor, and after vetoing it he was required to return the vetoed original to the Senate.
“All bills or joint resolutions passed shall be signed by the presiding officers of the respective houses.” Idaho Const, art. Ill, § 21. There is only one original of each bill that is signed by the presiding officer of each house and submitted to the governor. “After a bill has passed both houses, it shall be *531 enrolled not later than 48 hours after the time of passage.” Joint Legislative R. 4. “After being enrolled each bill ... shall be signed first by the presiding officer of the house in which it originated, then by the presiding officer of the other house, and lastly be submitted to the governor for his consideration.” Joint Legislative R. 5.
Thus, the Governor received the original of Senate Bill No. 1011, which was signed by the presiding officer of each house. It was the original of the bill upon which the Governor affixed his veto stamp, and it was the original of the bill that had to be returned to the Senate. Article IV, § 10, of the Idaho Constitution states, “Every bill passed by the legislature shall, before it becomes a law, be presented to the governor.” The Constitution further provides, “If he approve, he shall sign it, and thereupon it shall become a law; but if he do not approve, he shall return it with his objections to the house in which it originated....” Id. (emphasis added). All four of the words “it” refer to the original of the bill presented to the governor to which are affixed the signatures of the presiding officers of both houses of the legislature.
Therefore, the Governor would have to have returned the original Senate Bill No. 1011 to someone on or before April 4, 2015, and then returned the same original bill to the President Pro Tempore on April 6, 2015. The Deputy Attorney General would apparently have us believe that the Governor timely returned the original of the bill to some phantom senator, who gave the bill back to the Governor, and then the Governor later returned the original of the bill to the Senate Pro Tempore. There are certainly no facts supporting that fantasy. Indeed, the Governor submitted a brief as amicus curiae in this case, and he did not contend that he returned Senate Bill No. 1011 to anyone other than the President Pro Tempore, nor did he contend that he returned it to the President Pro Tempore on April 4, 2015, or earlier. The Deputy Attorney General was obviously aware of these facts when he disingenuously argued that the Governor could have timely returned the bill to some other senator.
It is undisputed that the Governor returned the vetoed bill to the President Pro Tempore. The President Pro Tempore stated in his letter that the return was made during the morning of April 6, 2015, which would be untimely. When asked about the President Pro Tempore’s statement as to when Senate Bill No. 1011 was given to him by the Governor, the Deputy Attorney General stooped to groundlessly disparaging the character of the President Pro Tempore.
Near the end of the Deputy Attorney General’s oral argument, the following exchange occurred regarding the statement by the President Pro Tempore in his letter that was transcribed in the Senate Journal:
Justice Eismann: “I’m reading from the journal. ‘Dear President Little: This communication reflects that Senate Bill 1011 was returned to my office at 8:52 a.m. on April 6, 2015.’ Should we accept that as true?”
Mr. Kane: “Mr. Justice, you can accept that as a statement of an individual senator.”
Justice Eismann: “It’s in the journal.”
Mr. Kane: “It is in the journal. But the senate had received that communication and without objection reconsidered the bill.”
Justice Eismann: “Is there any conflicting evidence in the journal?”
Mr. Kane: “There’s—”
Justice Eismann: “Is there any conflicting statement by somebody that they received this earlier in the journal?”
Mr. Kane: “Well, there’s the message of the Governor reflecting that he vetoed it earlier and there’s also the action of the senate.”
The Governor’s message gives no indication as to when he gave the vetoed bill to the President Pro Tempore. Thus, the Deputy Attorney General was contending that the Senate’s action in seeking to override the Governor’s veto showed that the Senate did not believe the President Pro Tempore’s statement that the Governor had returned Senate Bill No. 1011 to him on the morning of April 6, 2015. That the Deputy Attorney General in an act of desperation would make such a groundless attack on the President Pro Tempore’s character demonstrates the *532 total lack of substance in the Deputy Attorney General’s argument.
Two people have direct knowledge of when the Governor retened Senate Bill No. 1011 to the President Pro Tempore—the Governor and the President Pro Tempore. As stated above, not even the Governor has disputed the President Pro Tempore’s statement as to when the bill was returned to him. The record does not reflect why the Senate had a vote to override the Governor's veto when Senate Bill No. 1011 had already become law because the Governor had not returned it timely to the Senate. However, there is absolutely no reason to believe that the Senate did not believe the President Pro Tem-pore. The fact that the Deputy Attorney General would resort to making such a groundless attack upon the character of the President Pro Tempore demonstrated the total lack of merit in the Deputy Attorney General’s arguments regarding the facts.
In summary, the facts are undisputed that the Governor did not return Senate Bill No. 1011 to the Senate within the five days required by the Idaho Constitution, and so the bill became a law. The Secretary of State knew that the bill was not returned to the Senate timely because the documents showing an untimely return had been delivered to the Secretary of State at the end of the session by the Secretary of the Senate. In fact, at one point in his oral argument the Deputy Attorney General apparently inadvertently admitted that the Governor’s return was clearly late. He stated that if this Court wants to know “why is it that you [the Senate] took this into consideration when it was dearly late, those folks aren't in front of the Court.” (emphasis added). Why the Senate had a vote on overriding the Governor’s veto is irrelevant. Under the undisputed facts, the bill had already become law. Based upon the undisputed facts known to the Secretary of State, his obligation was clear and unambiguous. He had the statutory duty to certify the fact that the bill had become law as set forth in Idaho Code section 67-505.
The Secretary of State should have done exactly what the iconic former Secretary of State Pete Cenarrusa did when the Governor did not timely veto and return a bill—he refused to recognize the veto. Cenarrusa v. Andrus, 99 Idaho 404, 406, 582 P.2d 1082, 1084 (1978). Unfortunately, a majority of the Cenarrusa Court chose to disregard the plain meaning of the Idaho Constitution in order to uphold the veto under a hypothetical set of facts that were unrelated to the facts of the case.
In this ease, the arguments raised by the Deputy Attorney General in defense of the Secretary of State’s failure to perform his statutory duty were frivolous, unreasonable, and without foundation. The Deputy Attorney General mischaracterized the applicable law and made disingenuous and false statements regarding the facts. Therefore, the Coeur d’Alene Tribe is entitled to an award of reasonable attorney’s fees and other reasonable expenses pursuant to Idaho Code section 12-121.
Justice W. JONES concurs.

. The letter from the Secretary of the Senate was transcribed in the Senate Journal. It read as follows:
April 6, 2015
The Honorable Brad Little President
Idaho State Senate
Dear Mr. President:
This communication reflects that S 1011 was not returned to my office by 4:54 p.m. on April 4, 2015 in my capacity as the Secretary of the Senate. Other correspondence of legislation were [sic] slipped under my door and returned in accordance with Article IV, § 10 and Idaho Code §§ 67-504 & 505. Correspondence of legislation is routinely returned to me in this fashion. To the best of my knowledge no earlier return was attempted to my office, nor was I asked to receive such a return at any earlier time.
Sincerely,
Is! Jennifer L. Novak
Secretary of the Senate

. Senate Rule 8(A) states:
The Secretary of the Senate shall have custody and supervise the handling of all records, bills, documents, and other official papers; he shall allow no bills, records, or papers to be taken out of his custody or out of the Senate Chamber other than in the regular routine of business; nor shall he at any time or place allow the same to be handled or examined by any person whatsoever except the President, Senators, officers, and employees of the Senate in the discharge of their duties. Public records requests of the Secretary of the Senate shall be handled as provided in Rule 8(E).

. Senate Rule 7(E) states:
It shall be the duty of the Secretary of the Senate, at the close of each session of the legislature, to mark, label, and arrange all bills and papers belonging to the archives of the Senate, and to deliver the same, together with all the books of the Senate, to the Secretary of State, who shall certify to the reception of the same.

.Senate Rule 16 states:
When a bill has been vetoed by the Governor and his objections entered upon the Journal, that bill is before the Senate for reconsideration in accordance with Article 4, Section 10, Idaho Constitution; the question to be put by the Chair is, “Shall Senate Bill_pass, the Governor’s veto notwithstanding?” When the question of reconsideration has been stated, it shall be in order to receive only the following motions in the order named:
(1) Adjourn.
(2) Recess.
(3) Question of privilege (but personal privilege shall not be permitted).
(4) Call for orders of the day.
(5) Previous question.
(6) Limit debate.
(7) Postpone to a time certain.